531 So.2d 1124 (1988)
Lillian C. MOOLEKAMP and Claude Moolekamp
v.
Dr. Richard L. RUBIN, et al.
No. 88-CA 0048.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1988.
*1125 Stephen T. Wimberly of Hall, Lentini, Mouledoux & Wimberly, Metairie, for appellants.
Roy A. Raspanti, New Orleans, for appellees.
Before BYRNES, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
In this medical malpractice case defendant, the Patient's Compensation Fund, La. R.S. 40:1299.44, appeals a judgment awarding plaintiff an additional $150,000.00 above the $100,000.00 paid by the insurer of her qualified health care provider, Richard L. Rubin, M.D. The district court also ordered the Fund to pay interest calculated on the total recovery of $250,000.00 plus $1,730.00 for medical expenses, and $300.00 in expert witness fees. We affirm.
Defendant assigns two errors to the action of the district court. First, defendant takes issue with the district court ruling on defendant's motion in limine concerning plaintiff's burden of proof at trial. Second, defendant complains that the award is excessive.
In November 1983 plaintiff, Lillian Moolekamp, underwent surgery for cataract removal and lens implantation on her right eye. Richard L. Rubin, M.D. performed the surgery. During the operation an expulsive hemorrhage occurred, resulting in permanent loss of vision in Mrs. Moolekamp's right eye.
Pursuant to La.R.S. 40:1299.41-.48, Mrs. Moolekamp filed a complaint with the State Commissioner of Insurance. A medical review panel concluded that Dr. Rubin failed to conform to the appropriate standard of care and that his substandard performance was a cause of Mrs. Moolekamp's damages.
Mrs. Moolekamp sued Dr. Rubin for damages caused by his medical malpractice. Dr. Rubin's insurer, Louisiana Medical Mutual Insurance Company, agreed to settle its liability on plaintiff's claim and paid plaintiff its coverage limit of $100,000.00. Seeking additional compensation for her damages, plaintiff amended her petition to add the Patient's Compensation Fund as a defendant.
Prior to the hearing on plaintiff's demand for payment from the Fund, the Fund filed a motion in limine seeking a declaration of plaintiff's burden of proof on her demand. La.R.S. 40:1299.44C(5) provides that when
determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars....
Interpreting this provision in the context of this case the district judge ruled as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the negligence of Dr. Richard L. Rubin is admitted and established.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the liability of Dr. Richard L. Rubin for the loss of the right eye by plaintiff, LILLIAN C. MOOLEKAMP is admitted and established;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs will, therefore, not have to prove the causal relationship between the loss of the right eye of LILLIAN C. MOOLEKAMP and the negligence of Dr. Richard L. Rubin;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the liability of Dr. Richard L. Rubin for the "loss of (LILLIAN C. MOOLEKAMP's) health, which said loss of health has resulted in her being an invalid since her *1126 cataract operation of November 1983" is not admitted or established;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs LILLIAN C. MOOLEKAMP and CLAUDE MOOLEKAMP will, therefore, be required to prove the causal relationship between the "loss of (LILLIAN C. MOOLEKAMP's) health, which said loss of health has resulted in her being an invalid since her cataract operation of November 1983" and the negligence of Dr. Richard L. Rubin.
From this ruling, plaintiffs applied to this court for review. Defendants neither opposed nor responded to plaintiffs' application. This court refused to exercise its supervisory jurisdiction, and a subsequent application to the Supreme Court was denied by that Court.
After hearing evidence on plaintiff's damages and considering her demand for additional compensation to be paid from the Fund, the district court ordered the Fund to pay additional compensation as set out in the first paragraph of this opinion.
In Louisiana when someone, by his act, his negligence, his imprudence, or his want of skill, causes damage to another, an obligation arises for him by whose fault the damage happened to repair the damage. La.C.C.Arts. 2315 and 2316. Thus, the elements of a cause of action under Articles 2315 and 2316 are fault, causation, and damage. Buckley v. Exxon Corporation, 390 So.2d 512 (La.1980). Fault is a broad concept, embracing all conduct falling below a proper standard. Weiland v. King, 281 So.2d 688 (La.1973); see Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971).
To determine whether liability exists under the facts of a particular case, the Supreme Court adopted a duty-risk approach. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive-It-Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962). The duty-risk approach has been analyzed to require the following inquiries:
(1) Was the conduct complained of a cause-in-fact of the harm?
(2) Was the defendant under a legal duty imposed to protect against the particular risk involved?
(3) Taking into account the dangers created by defendant's conduct, including but not limited to that which actually occurred in the instant casegiving due but not automatically decisive weight to any violation of relevant statutewas the defendant's conduct negligent, substandard, blameworthy?
(4) Was the plaintiff damaged; if so, to what extent?
D.W. Robertson, Reason Versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1, 20-22 (1973-1974); see also W. L. Crowe, The Anatomy of a TortGreenian as Interpreted by Crowe Who Has Been Influenced by MaloneA Primer, 22 Loy.L. Rev. 903 (1976). Thus, the elements of liability translate to causation-in-fact of plaintiff's harm, a legal duty imposed on defendant to protect plaintiff against the risk of the harm which occurred, a breach of that duty, and damage caused by the breach of the duty owed to the plaintiff.
Fault becomes a breach (negligent, substandard or blameworthy performance) of a legal duty owed by defendant to plaintiff to protect plaintiff from the harm which befell him. Causation is split into two inquiries: first, did defendant's behavior, considered without determining fault, in fact contribute to plaintiff's harm; and second, having found fault with defendant, did defendant's breach of his legal duty to plaintiff result in damage to plaintiff. Damage concerns both a recognition of plaintiff's harm as a general proposition that plaintiff has been wronged, as well as determining what specific wrong or injury befell plaintiff because of defendant's fault, his breach of duty.
Plaintiff must allege some harm as part of his effort to state a cause of action. To establish defendant's liability, plaintiff must prove defendant's fault caused him some damage. If plaintiff can prove that *1127 defendant's breach of a legal duty imposed to protect plaintiff from a particular harm in fact caused that harm to befall plaintiff, defendant's liability to plaintiff is established regardless of the extent of damage shown, great or small. To establish the appropriate compensation for which defendant is liable to plaintiff, after establishing defendant's liability, plaintiff must prove the extent of the damages caused by defendant's fault. That is, having proven that defendant's fault caused him some damage, plaintiff must go on to prove what damage, by kind and seriousness, was caused by defendant's fault before the court can render an appropriate award as compensation.
Establishing liability does not relieve plaintiff from proving his damages. Liability implies some damage, but not specifically which damage or how much. Defendant is liable only for that damage caused by his fault; whatever harm has befallen plaintiff must be apportioned into that caused by defendant (which could be all of the harm) and that caused by any other source (other defendants, third-parties, "acts of God", the plaintiff). See e.g., Connell v. Black, 260 So.2d 924 (La.App. 4th Cir.1972).
When La.R.S. 40:1299.44 C. (5) provides that "the court shall consider the liability of the health care provider as admitted and established," the court is instructed to accept as proven that the health care provider's fault (his breach, his substandard performance of a legal duty owed to plaintiff for protection from certain risks of harm) has caused plaintiff some damage. This instruction is enforced when the health care provider has decided to pay compensation which exhausts its statutorily limited liability of $100,000.00. From there, if the patient demands additional compensation, the court, considering liability established, hears evidence to decide what damage (some damage having been established) was caused by defendant's fault, and to determine what amount, if any, is to be paid from the Patient's Compensation Fund.
In this case, Dr. Rubin performed surgery on plaintiff's right eye. During surgery an expulsive hemorrhage occurred. Following surgery plaintiff is left permanently without vision in her right eye. A medical review panel concluded that Dr. Rubin did not exercise the appropriate standard of care and that his substandard performance caused damage to plaintiff. Dr. Rubin's liability was admitted and established when his insurer paid its policy limits of $100,000.00. The court is, therefore, statutorily instructed to conclude that Dr. Rubin's fault (his substandard performance of his legal duty to exercise the appropriate standard of care to protect plaintiff from the risks of eye surgery not properly performed) caused plaintiff some damage, which damage, in this case, must be the loss of vision in plaintiff's right eye.
We find no error in the district court ruling that loss of vision in plaintiff's right eye was the damage necessarily admitted and established when Dr. Rubin's liability was admitted and established by his insurer paying its policy limits of $100,000.00. The district court ruling relieved plaintiff from proving that Dr. Rubin was liable for loss of vision in her right eye, but plaintiff was still required to prove any other damages alleged to have been caused by Dr. Rubin. We find that the district court properly implemented the statute, and find no reason to reverse or modify the judgment on this assignment of error.
Defendant's other complaint is that the award of an additional $150,000.00 for a total recovery of $250,000.00 is excessive. In determining what amount, if any, was to be paid from the Patient's Compensation Fund, the court had to decide what damage was caused by Dr. Rubin's fault, the degree of seriousness of that damage, and choose a monetary amount as compensation to the plaintiff for that damage. The trier of fact has much discretion in reaching its factual conclusions and determining compensation amount, for that is the essence of the role of our trial courts. This court on appeal will not disturb the factual conclusions and compensation determinations of the trier of fact unless those conclusions are clearly wrong and those determinations are a clear abuse of discretion.
*1128 The task of this court on review is not to assess plaintiff's case de novo, determine what we would award, and compare our determination with the award given by the district court. We do not substitute our judgment for his. Our task is, on the showing made by appellant based on the record before us, to determine whether the trial court's factual conclusions are clearly wrong or whether his compensation award is an abuse of discretion.
The district judge as trier of fact heard evidence of what damage plaintiff has suffered because of losing vision in her right eye. Prior to this unfortunate surgery plaintiff suffered with cataracts in both eyes. The plan was to have surgery on each eye, separately, with the hope of restored unimpaired vision in both eyes. Now, she will never see with her right eye, and may require that the eye be removed because of pain. The cataract remains in her left eye because she, not unreasonably, is reluctant to encounter the risks of surgery on that eye. Nevertheless, her left eye may worsen requiring that she risk surgery or accept the cataract impaired vision. Plaintiff was 67 when she lost vision in her right eye.
Dr. Kaufman provided the following assessment of plaintiff's condition.
She will be disabled and the loss of this first eye does inflict on her this disability that she would not otherwise have. Because if the other eye were at 20/20 after her surgery, she would certainly get this one fixed and both eyes would be normal and the glare would be gone and all the rest. It is perfectly reasonable for her not to do that now.
Expanding on the issue of whether she should undergo cataract surgery on her left eye, he said,
It's not such a simple thing, because as I mentioned, it's really not a medical decision. It's a functional decision. So, we told her surgery was available, that it would be justified, that if she wanted to put it off, that was also perfectly reasonable to do. And the decision would have to be hers based upon her limitations and her perception of risk.

* * * * * *
There's a feeling, without clear data or information, that if an expulsive hemorrhage happens in one eye, it's a little more likely to happen in the other eye. There's no good reason to think that it is true. It's one of those things that people worry about ... and the technique of surgery would be modified because of it.
And plaintiff's cardiologist, Dr. Glancy, when questioned on whether there was any medical reason for his suggestion that plaintiff forego surgery until she is virtually blind from the cataract in her left eye, responded,
You can see with one, you can't see with none. The lady's got bit once. I wouldn't go back to that dog again, I don't think. It's a horrible thing to lose an eye, but to lose a second eye is impossible.
Plaintiff is completely blind in her right eye, and because of a cataract she suffers a significant disability in her left eye. She has a reasonable concern that cataract surgery on her left eye may result in loss of vision in that eye, leaving her, obviously, blind. Plaintiff testified that she experiences pain in her right eye about four times a day for about a second each time that feels like a "hot poker." The pain is enough to cause her discomfort, but not enough for her to risk surgery for removal of the eye, though Dr. Kaufman says, "if things are really hopeless and there is severe pain, its usually better to remove the eye." Dr. Kaufman categorized the pain as "often deep, constant, and severe." Plaintiff described the pain she experienced after she went home from the hospital, saying, "I saw holy hell. I've been there a hundred times if I have been there once. Nobody knows what I've suffered, because forty-five stitches behind here (indicating) and they were all sticking in the back there; didn't feel good." She testified to crying spells, sleepless nights, constant pain, and that she could not take her medication because it makes her vomit.
*1129 She testified concerning her fondness for reading and that now she can no longer read newspaper print and that what little reading she can do requires glasses and a magnifying glass. Dr. Kaufman confirmed that reading would require much greater effort and that plaintiff will fatigue more rapidly from reading.
Defendant argues that plaintiff's age dictates a lower award than if she were younger. Defendant also argues that plaintiff's left eye vision is relatively good, 20/40 to 20/50, so that she has lost only her right eye, and should mitigate her damage by submitting to surgery on her left eye because the risks are small and the prognosis for restoration of unimpaired left eye vision is good.
All of these factors were presented to the trial judge. Rearguing them to this court has not persuaded us that the trial judge's factual conclusions were wrong or that his compensation award was an abuse of discretion. We, therefore, will not disturb the award.
Accordingly, we affirm the judgment of the district court.