CIACCIO, Judge.
In this medical malpractice case defendant, the Patient’s Compensation Fund, LSA R.S. 40:1299.44, appeals a judgment awarding plaintiff an additional $300,000.00 above the $100,000.00 paid by the insurer of her qualified health care provider, Dr. Richard Rockwell. The district court also ordered the Fund to pay $15,073.63 in past medical expenses, as stipulated to by the parties, as well as, legal interest, costs and future medical expenses. We affirm.
On October 6, 1987, plaintiff, Lisa Borne went to the Optical Department of Maison Blanche Department Store. She was examined by Dr. Rockwell in anticipation of being fitted with a pair of extended wear soft contact lenses. The following day plaintiff *148 returned to the store to take possession of the lenses prescribed by Dr. Rockwell. An employee from the Optical Department informed plaintiff that Dr. Rockwell was not in the office to fit the contact lenses but then proceeded to show her how to insert and clean them. Plaintiff bought the lenses and began wearing them.
Plaintiff wore the contact lenses until October 17, 1987 when she began experiencing pain in her left eye. She contacted the Optical Department at Maison Blanche but was informed that Dr. Rockwell was not available for an examination. Plaintiff then called Dr. Marilyn O’Byrne, an ophthalmologist, who examined plaintiffs eye that day. Dr. O’Byrne told plaintiff she had an eye infection and prescribed antibiotic medication. Plaintiff saw Dr. O’Byrne again the next day complaining that the pain was getting worse. Dr. O’Byrne referred her to the LSU Eye Clinic.
Later that day, plaintiff saw Dr. Michael Insler, an ophthalmologist at the LSU Eye Clinic. Dr. Insler admitted plaintiff to Hotel Dieu Hospital with the initial diagnosis of a severe ulcer due to a pseudomonas infection with a purulent discharge. Plaintiff remained hospitalized from October 18 through October 26, 1987.
Following her discharge from Hotel Dieu, Dr. Insler treated plaintiff on an outpatient basis. In December 1987, Dr. In-sler concluded that because of scarring and vascularization in plaintiff’s left eye resulting from the contact lens related arterial keratitis, plaintiff should undergo a corneal transplant. Dr. Insler performed the corneal transplant of the left eye on January 21, 1988.
Soon thereafter, plaintiff suffered postoperative complications. The sutures used for the transplant loosened, necessitating their removal. Also, four separate instances of corneal rejection ensued. After the episodes of pseudomonas infection and corneal rejections, plaintiff suffered a decrease in visual acuity of the left eye, a decrease of peripheral vision of the left eye, astigmatism and myopia of the left eye. While she was eventually fitted with a hard contact lens for the left eye, she can only wear it six to eight hours a day, and without it, she is legally blind in that eye.
Pursuant to LSA R.S. 40:1299 et seq., plaintiff filed a complaint with the State Commissioner of Insurance, alleging medical malpractice on the part of Dr. Rockwell. Before the medical review panel convened, Dr. Rockwell and his insurer, Agricultural Insurance Company, tendered his medical malpractice policy limits of $100,000.00 and statutorily admitted his liability under LSA R.S. 40:1299.44 C(5). Plaintiff then filed a petition for authority to compromise and obtained court approval for the settlement with Dr. Rockwell for $100,000.00, reserving her right to seek additional damages from the Patient’s Compensation Fund. The matter went to trial on the issue of quantum only.
As its sole assignment of error, defendant complains that the award of $300,-000.00 in general damages is excessive.
In determining what amount, if any, was to be paid from the Patient’s Compensation Fund, the court had to determine what damage was caused by Dr. Rockwell’s fault, the extent of that damage, and choose a monetary amount as compensation to the plaintiff for that damage. The trier of fact has much discretion in reaching its factual conclusions and determining compensation amount, for that is the essence of the role of our trial courts. This court on appeal will not disturb the factual conclusions and compensation determinations of the trier of fact unless those conclusions are clearly wrong and those determinations are a clear abuse of discretion.
The task of this court on review is not to assess plaintiff’s case de novo and compare our determination with the award given by the district court. We do not substitute our judgment for that of the trial judge. Our task is, on the showing made by appellant based on the record before us, to determine whether the trial court’s factual conclusions are clearly wrong or whether the compensation award is an abuse of discretion. Moolekamp v. Rubin, 531 So.2d 1124 (La.App. 4th Cir.1988).
The trial judge as trier of fact heard the testimony of plaintiff, Dr. Insler and the *149 video deposition of Dr. George Ellis. Defendant presented no witnesses or other evidence on its behalf.
Dr. Insler testified that when he first saw plaintiff in October 1987, her left eye was swollen shut. He stated that she had a corneal ulcer caused by the bacteria pseu-domonas which caused tremendous damage within a short period of time. His initial impression was that he was not certain he could save the left eye because the infection had spread to the sclera. He testified that it was very rare that an eye could be saved where the infection had spread to the tissues surrounding the cornea. According to Dr. Insler, plaintiff had no vision in her left eye from October until after he did the corneal transplant in January 1988. He testified the transplant had been delayed due to inflammation and infection because in order to have a successful transplant, the surrounding tissue had to be free from infection. Plaintiff had substantial problems following the transplant including poor wound healing and at least four episodes of tissue rejection. Dr. Insler prescribed prednisone, a steroid, which resulted in weight gain, fluid retention, mood swings and interruption of plaintiffs menstrual cycle. Plaintiff could not discontinue the use of the prednisone until September 1988.
Dr. Insler opined that the corneal transplant would last another ten to twenty years, if nothing in plaintiffs environment caused an infection that could trigger tissue rejection. Dr. Insler’s most recent examination of plaintiff prior to trial revealed her left eye had a corrected vision of 20/50, with a hard contact lens. The irregularities of plaintiffs cornea caused friction between the contact lens and the cornea. As a result, plaintiff can only wear the hard lens for six to eight hours a day. Her left eye cannot be corrected with glasses.
Dr. Ellis examined plaintiff for an independent medical evaluation. According to Dr. Ellis, plaintiff has a haze in one margin of the corneal transplant as a result of the tissue rejection. He recommended that plaintiff undergo a revision of the graft to improve her vision. This surgical procedure would entail a surgeon removing and resuturing the cornea to remove any astigmatism. Plaintiff has refused to undergo the operation. Defendant argues, in refusing to consent to this surgery, plaintiff fails to mitigate her damages. However, Dr. Insler testified and the trial court found that the surgery was unpredictable, and there is a substantial risk that plaintiff could lose the transplant.
The trial judge considered plaintiffs young age, the fact that her social and recreational activities are now severely limited and that her future earning capacity is diminished. Additionally, the judge considered that plaintiff has suffered severe physical pain and emotional trauma as a result of the eye condition, surgery and post operative complications. These factors coupled with the fact that she will have to undergo future surgeries with the accompanying risks of pain, suffering, infection, tissue rejection and the side effects of medication, warrant a general damage award of $300,000.00 as compensation to plaintiff. While the award may appear to be generous, we cannot say the trial judge abused its much discretion. We, therefore, will not disturb the award.
Accordingly, we affirm the judgment of the district court.
AFFIRMED.
WILLIAMS, J., concurs.