JjDOUCET, Judge.
The plaintiffs appeal as inadequate damages awarded pursuant to a jury verdict in this wrongful death and survival action against the Patient Compensation Fund (PCF).
In early February 1989, Ruby Lee Jones, a 75-year-old widow, was hospitalized at St. Francis Cabrini Hospital (Cabrini) in Alexandria, with a broken hip. Blood work done prior to surgery to repair the hip revealed anemia. Testimony at trial indicated that anemia in a person of Mrs. Jones’s age generally indicates internal bleeding. The most common source of internal bleeding is the gastro-intestinal tract. Therefore, tests focusing on that area were ordered by Dr. Harishwar Agarwal. A gastroscopio examination revealed that laher stomach was raw and inflamed and that the opening of the stomach into the bowel was narrowed. However, no bleeding was revealed.
Next, a flexible sigmoidscope was used to examine the rectum and lower part of the colon. No bleeding or perforation was found.
Finally, on February 16, 1989, radiographic examination was conducted by means of a barium enema. Hospital employees inserted a tube and began the flow of barium. The radiologist, Dr. William Baber, noted that the flow was not progressing as expected. After several attempts to correct the problem, X-rays were taken. Upon examination of the X-rays, Dr. Baber concluded that Mrs. Jones’s rectum was torn or perforated.
Dr. Baber called Dr. Agarwal and Dr. Weiss, Mrs. Jones’s treating orthopedic surgeon. Dr. Agarwal also concluded that there was a perforation of the rectum. Because of the danger of infection due to the escape of barium and fecal material, the doctors agreed a colostomy was necessary. The need for surgery was discussed with Mrs. Jones and her family and it was agreed that Dr. Donald Edgerton would perform the surgery.
Following the surgery, Mrs. Jones remained at Cabrini for convalescence from both her hip injury and the colostomy surgery. Dr. Weiss’s orders indicated that no weight was to be put on Mrs. Jones’s hip. At some time during her convalescence, employees of Cabrini allegedly caused her to put weight on the hip while transferring her to or from her bed. X-rays revealed some displacement of the bone in her hip. As a result, her family had her transferred to Rapides General Hospital. There she continued her convalescence uneventfully and was discharged on April 7, 1989.
IsMrs. Jones was already a resident of Regency House Nursing Home. However, prior to her hospitalization, she had lived independently in an apartment. After the hospitalization, she had to stay in the total care section of the nursing home. However, she paid to retain her apartment so that she could move back to it after she recovered.
On May 3,1989, Dr. Edgerton re-admitted Mrs. Jones to Rapides General for reversal of the colostomy procedure. Dr. Edgerton testified that he advised against reversal of the procedure and warned Mrs. Jones that it could kill her. However, Mrs. Jones felt reversal was worth the risks.
Dr. Edgerton reversed the colostomy on May 4, 1989. Afterwards, material began to drain from Mrs. Jones’s abdomen which indicated leakage in the intestinal tract. A perforation was found in the ileum, a part of the small intestine. Testimony indicates that none of the tests would have reached this area of the intestines. An ileostomy was performed on May 14, 1989, to correct the *675 problem. After this procedure, the drainage from the ileostomy showed signs of internal bleeding. Dr. Weldon, a partner of Dr. Edg-erton, operated to correct the problem. He found adhesions and bleeding. He further removed a portion of the ileum which showed signs of poor circulation. In spite of corrective procedures, the bleeding showed no signs of stopping after the surgery. The treating physicians did not believe that Mrs. Jones could survive another surgery. Therefore, they tried to stop the bleeding by inserting an X-ray catheter into the artery supplying the bowel and trickling in Vaso-pressin, a drug which constricts the blood vessels. However, this did not work. On June 8, 1989, Mrs. Jones died at Rapides General Hospital.
After presenting the matter to a medical review panel, Mrs. Jones’s son and daughter, Willie V. Jones, Jr. |4and Billie Jo Jones, brought this suit against Cabrini, Dr. Baber, Dr. Agarwal, and their insurers. The Patient’s Compensation Fund was joined by an amended petition. The plaintiffs sought damages in connection with both wrongful death and survival actions.
The plaintiffs settled with Cabrini for $100,000, its maximum liability under La.R.S. 40:1299.41; and with Dr. Baber for $25,000. In each case, the parties submitted to the court a joint petition for approval of the settlement. Each petition contained a demand on the PCF for excess damages. Dr. Agarwal and his insurer were dismissed from the litigation.
Prior to trial, the court allowed the PCF to file an amended answer pleading the decedent’s failure to mitigate her damages. After hearing the evidence, the jury returned a verdict in the form of answers to jury interrogatories:
WE, THE JURY, FIND AS FOLLOWS:
IN EACH SPACE BELOW, PLEASE INDICATE THE AMOUNT OF DAMAGES SUSTAINED BY THE PARTIES AS A RESULT OF THE LIABILITY OF THE DEFENDANT.
1. ESTATE OF RUBY LEE JONES
A PHYSICAL AND BODILY INJURIES $ -0-
B. PAIN AND SUFFERING $ 50,000.00
C. DISFIGUREMENT $ -0-
D. LOSS OF ENJOYMENT OF LIFE $ -0-
E. PHYSICAL DISABILITY $ -0-
F. FUNERAL EXPENSES $ -0-
G. MEDICAL EXPENSES $ -0-
2. BILLIE JO JONES
A. MENTAL ANGUISH $ -0-
B. LOSS OF LOVE, AFFECTION COMPANIONSHIP AND SOCIETY $ -0-
3. WILLIE V. JONES, JR.
A MENTAL ANGUISH $ 7,500.00
B. LOSS OF LOVE, AFFECTION COMPANIONSHIP AND SOCIETY $ -0-
The trial judge signed a judgment reflecting this verdict and allowing the PCF a credit in the amount of $125,000 as a result of the prior settlements.
15The plaintiffs appeal the judgment essentially alleging that it is inadequate.

JURY INSTRUCTION: LIABILITY

La.R.S. 40:1299.44(C)(5) provides in pertinent part that:
In approving a settlement or determining the amount, if any, to be paid from the patient’s compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
Plaintiffs argue that since Cabrini paid $100,000 its liability was established. As a result, they argue the trial judge incorrectly instructed the jury in such a way as to lead them to believe they could decide liability.
Adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. The adequacy of jury instructions must be determined in light of the jury instructions as a whole. Evangeline Farmers Cooperative v. Fontenot, 565 So.2d 1040 (La.App. 3rd Cir.1990); Kaplan v. Missouri-Pacific Railroad Co., 409 So.2d 298 (La.App. 3rd Cir.1981).
[[Image here]]
*676 An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial. Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5th Cir.), writ denied, 434 So.2d 1097 (La. 1983).
Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1152 (La.App. 3 Cir.1991).
Plaintiffs complain that the following instructions were contradictory and confusing.
Liability admitted. Liability is stipulated or admitted in this case and the jury will not have to make a finding on legal liability.
[[Image here]]
| f,Damages. We next come to the issue of damages. In this case while the fault or liability of St. Frances Cabrini to the plaintiff is established, the plaintiff at trial must nonetheless demonstrate what damages by kind and by seriousness were caused by St. Frances Cabrini’s fault.
[[Image here]]
You are not to award damages for any injury the plaintiffs may have suffered unless it has been established by a preponderance of the evidence in the case that such injury was proximately caused by St. Frances Cabrini Hospital.
This court in Savelle v. Heilbrunn, 552 So.2d 52, 56 (La.App. 3 Cir.1989), writ denied, 556 So.2d 1267 (La.1990) stated:
In Moolekamp v. Rubin, 531 So.2d 1124 (La.App. 4th Cir.1988), the Fourth Circuit thoroughly analyzed the issue of the effect of the admission of liability set forth in LSA-R.S. 40:1299.44 C(5).
[[Image here]]
[W]hen liability is admitted and established pursuant to LSA-R.S. 40:1299.44 C(5), the court is statutorily instructed to accept as proven that the health care provider’s fault (i.e., his substandard performance of a legal duty owed to the plaintiff for protection from the harm which befell him) has caused plaintiff some damage. “From there, if the patient demands additional compensation, the Court, considering liability established, hears evidence to decide what damage (some damage having been established) was caused by defendant’s fault, and to determine what amount, if any, is to be paid from the Patient’s Compensation Fund.” Moolek-amp, supra at 1127.
The court in that case further stated at page 57:
Thus, the fact that liability is established does not relieve the plaintiff from proving the extent of the damages caused by defendant’s fault. Liability implies some damage but not specifically which or how much damage. “Defendant is liable only for that damage caused by his fault; whatever |7harm has befallen plaintiff must be apportioned into that caused by defendant (which could be all of the harm) and that caused by any other source (other defendants, third-parties, ‘acts of God’, the plaintiff.)” Moolekamp at p. 1127.
See also: Stuka v. Fleming, 561 So.2d 1371 (La.1990). Under that case, the plaintiffs must show what part of the damage sustained was caused by Cabrini. In light of this holding, the instructions given by the trial judge taken as a whole, “reasonably point up the issues” and “provide correct principles of law for the jury to apply to those issues.” Accordingly, we find no error in the instructions given to the jury on this point.

DAMAGES

The plaintiffs next argue that the jury erred in failing to award medical and funeral expenses, in awarding inadequate damages for pain and suffering, in failing to award damages to Billie Jo Jones, and in awarding inadequate damages to Willie V. Jones.
Cabrini’s decision to settle for the statutory maximum of $100,000 constitutes an admission of liability for both the separated hip fracture and the perforated rectum. The record clearly shows that medical expenses were incurred as a result of the perforation, yet the jury awarded no medical expenses. Further, in order to award damages to Willie V. Jones, the jury would have had to conclude that negligence on the part of the hospital caused Mrs. Jones’s death. *677 However, they failed to make an award to the daughter or to award funeral expenses. The verdict sheet contains internal inconsistencies such that we can conceive of no reasonable factual scenario which would support it.
When inconsistent and confusing findings do not necessarily support a judgment either for the defendant or for the plaintiff, we must assign the jury’s findings no weight and render a proper judgment based on our independent review of lathe record, in accordance with law. Porter v. Utica Mutual Insurance Co., 357 So.2d 1234 (La.App.2d Cir.1978); McLean v. Hunter, 495 So.2d 1298 (La.1986); LSA-C.C.P. art. 2164.
Veal v. Forrest, 543 So.2d 1121 (La.App. 1 Cir.1989). See also: Lewis v. Wal-Mart Stores, Inc., 546 So.2d 267 (La.App. 3 Cir. 1989).
Accordingly, we have conducted a de novo review of the record to ascertain the extent of the damage arising from Cabrini’s fault. Our review convinces us that plaintiffs have shown Cabrini’s fault resulted in' pain and suffering resulting from the hip separation; pain and suffering from the rectal perforation and resulting colostomy; in medical expenses incurred in correcting the perforation via colostomy; and increased living expenses because of Mrs. Jones’s need for nursing home care. However, we cannot conclude, based on the record before us, that, as has been argued by the plaintiff, the reversal of the colostomy and subsequent procedures to stop bleeding were subsequent treatments required to resolve the original harm. Elliott v. Robinson, 612 So.2d 996 (La.App. 2 Cir.1993). Further, the record before us does not support a conclusion that the defendant’s fault in connection with either the hip separation or the rectal perforation resulted in the death of Mrs. Jones.
Dr. Edgerton testified at trial that many people never have their colostomies reversed and live normal fives in spite of this. He further testified that he warned Mrs. Jones that, in her case, a reversal would be very risky and she very well might not survive, but she insisted on the procedure. He gave it as his opinion that she would not have died had she not had the reversal surgery. Further, the evidence at trial indicates that Mrs. Jones had internal bleeding prior to any procedure which could have caused the ^perforation. The bleeding which occurred after the reversal surgery was from perforations which occurred in areas unaffected by anything done by Cabrini.
In making an initial award of damages at the appellate level, we are not limited to an award of either the lowest or highest amount we would affirm. Rather, we set the award in an amount which is just compensation for the damages revealed by the record. Lee v. Great Southwest Fire Ins. Co., 493 So.2d 789 (La.App. 2nd Cir.1986).
Savelle v. Heilbrunn, supra, at p. 59. In fight of the evidence of record, we will award general damages for Mrs. Jones’s pain and suffering, and special damages for increased living expenses and medical expenses resulting from hip separation, rectal perforation and colostomy, only as follows:
GENERAL DAMAGES $82,000.00
SPECIAL DAMAGES 40,998.62
Since we have found no causal connection between Cabrini’s actions and Mrs. Jones’s death, no award will be made in the wrongful death claim.
On appeal, no one contests the credit granted the PCF as a result of the settlements. No assignments of error address the appropriate amount of the credit. Therefore, this portion of the judgment will not be disturbed. Costs of this appeal are to be divided between the parties.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
GUIDRY, C.J., dissents and assigns written reasons.
COOKS, J., dissents for the reasons assigned by Guidry.