665 So.2d 109 (1995)
Louis REY, et al.,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, et al.
No. 95-CA-0661, 95-CA-0662.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1995.
Writ Denied March 22, 1996.
*110 Harry T. Widmann, Metairie, for Plaintiffs/Appellants.
Bruce A. Cranner, Metairie, for Defendants/Appellees.
Before BARRY, JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
This is an appeal from a trial court judgment sustaining an exception of prescription in favor of the Louisiana Patient's Compensation Fund (the Fund) which resulted in the dismissal of the plaintiff's case for excessive damages. The issue before us is whether the Fund lacks standing to raise prescription once the patient and health care provider have agreed to settle a malpractice claim for the statutory maximum of $100,000.
FACTS
Louis Rey was diagnosed in the early 1980's with bilateral cataracts. Dr. J. McComiskey performed a cataract extraction on Rey's left eye in 1984 and on his right eye in 1986. During both surgeries, Dr. McComiskey implanted anterior chamber intraocular eye lenses. After the 1986 implant, however, Rey continued to experience problems with his right eye and subsequently the implant in that eye was removed. Rey filed suit against the lens manufacturer in 1992 and, in the course of discovery, learned that the lenses implanted in his eyes were "investigational devices." In August 1993, based on Dr. McComiskey's failure to inform him of this fact prior to or after the implantation of the lenses, Rey filed suit against Dr. McComiskey and his medical malpractice insurer, St. Paul Fire and Life Insurance Company (St. Paul). In his petition, however, Rey alleged that his claim sounded in battery rather than in medical malpractice or negligence. In response to the defendants' exception of prematurity for failure to present the claim to the Medical Review Panel, Rey again contended that his action was based on a tort. Prior to resolving this issue and judgment on the exception, Dr. McComiskey and St. Paul agreed to pay Rey the statutory maximum of $100,000. Rey filed a petition in the district court for judicial approval of the settlement, as well as a demand for payment of additional amounts from the Fund. The Fund opposed approval of this medical malpractice settlement on several grounds, including prescription.
In June 1994, the district court approved the settlement proposal with a reservation of Rey's rights against the Fund for excess damages. In addition, the court specifically provided that the settlement "[did] not preclude the Louisiana Patient's Compensation from raising those issues set forth in the objections to the settlement filed in the record." Accordingly, the Fund filed exceptions of no cause of action, prescription, and prematurity. The district court overruled the exceptions of no cause of action and prematurity, but sustained the Fund's exception of prescription and dismissed the case against *111 the Fund assigning costs to Rey. Rey appeals this judgment.

ASSIGNMENT OF ERROR NO. 1
Rey argues that, in accordance with Kelty v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir.1988), writs denied, 536 So.2d 1221, 1222 (La.1989), the Fund does not have standing to raise prescription. In Kelty, this Court held that where the settlement is for the maximum amount, the fund is statutorily limited to contesting only the amount of damages and does not have the right to question for any reason the health provider's statutorily admitted liability. Kelty, 534 So.2d at 1334.
The Fund attempts to distinguish this case from Kelty, arguing that this settlement agreement contains language which allows prescription to be raised. The Fund is a legislatively created entity designed to satisfy settlements and/or judgments against health care providers in excess of $100,000. The rights of the Fund cannot be expanded beyond its statutory limitations, nor can its status be changed to that of a party litigant by language injected into a settlement agreement.
The Fund contends that the statutory maximum was not met, however, because the settlement included damages for "negligence, breach of contract, lack of informed consent, malfeasance, non-feasance, res ipsa loquitur and strict liability," as well as for medical malpractice.[1]
We do not find this argument persuasive. La.Rev.Stat. 40:1299.44(C)(5) (West 1992) provides in pertinent part:
In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars. (emphasis added).
Thus, once the insurer has paid its policy limits, statutory liability is admitted and the Fund has no standing to raise the issue of prescription.
We note that the trial court questioned the good faith of the parties, stating in its Reasons for Judgment that "[p]laintiff is a friend of defendant and this Court has serious misgivings about a settlement of $100,000, of which only part could be medical malpractice, given seven years after an alleged `battery' where the settlement merely includes the words `medical malpractice'." We find the concerns of the trial court valid but the Legislature provides very limited protection for the Fund:
For the benefit of both the insured and the Patient's Compensation Fund, the insurer of the health care provider shall exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof....
La.Rev.Stat. 1299.47(C)(7) (West 1992). Thus, although it appears on the face of the pleadings that Rey's claim had prescribed, there is nothing in the record to indicate collusion between the plaintiff and defendants. In the absence of a showing of collusion, the settlement agreement must stand even though the trial court suspects a lack of good faith on the part of the insurer. The trial court could have refused to approve the settlement but cannot protect the Fund by granting it standing to raise prescription. Rather, it is for the Legislature to determine whether additional rights should be given the Fund in order to provide it with greater protection against questionable claims. We do note, however, that the Fund does have standing in the case of an excess judgment against it, Felix v. St. Paul and Marine Ins. Co., 477 So.2d 676 (La.1985), and that once a claim has been made against the Fund for excess damages, the plaintiff is required to prove the extent of his damages attributable to malpractice. See Moolekamp v. Rubin, 531 So.2d 1124 (La.App. 4th Cir.1988).

*112 ASSIGNMENT OF ERROR NO. 2

Rey argues that La.Rev.Stat. 9:5628 unconstitutionally limits the maximum time for discovery of malpractice to three years. This issue was not raised in the trial court and, accordingly, we do not consider it on appeal.[2]Vallo v. Gayle Oil Co., Inc., 94-1238 (La. 11/30/94), 646 So.2d 859, 864-65.

ASSIGNMENT OF ERROR NO. 3
Rey argues that, under the doctrine of contra non valentem, his claim has not prescribed. Because the Fund has no standing to raise the issue of prescription, we need not consider this argument.
For the foregoing reasons, we reverse the judgment of the trial court sustaining the Fund's exception of prescription and remand the matter for further proceedings. The judgment of the trial court denying the exceptions of prematurity and no cause of action are affirmed.
REVERSED AND REMANDED.
NOTES
[1] The trial court stated in its Reasons for Judgment that "less than $100,000.00 can be attributed to medical malpractice."
[2] Nor did Rey serve or notify the attorney general of the challenge of the constitutionality of the statute so that the attorney general could elect whether to exercise his statutory right to represent the State's interest in the proceedings. La. Rev.Stat. 49:257(b) (West Supp.1995).