815 So.2d 319 (2002)
Joe REED, et al.
v.
ST. CHARLES GENERAL HOSPITAL.
No. 2001-C-1148.
Court of Appeal of Louisiana, Fourth Circuit.
March 27, 2002.
Stephen M. Pizzo, Blue Williams, L.L.P., Metairie, LA, for St. Charles General Hospital.
*320 Russ M. Herman, Herman, Herman, Katz & Cotlar, L.L.P., and Warren A. Goldstein, Warren A. Goldstein, A P.L.C., New Orleans, LA, for Plaintiffs/Respondents.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, SR., and Judge TERRI F. LOVE).
CHARLES R. JONES, Judge.
Joe and Dorothy Reed filed a petition for damages alleging that Mr. Reed contracted AIDS from a blood transfusion that he received while a patient in St. Charles General Hospital on March 12, 1985. Joe Reed discovered that he was infected on September 29, 1987, and Dorothy Reed discovered that she was infected on December 11, 1987. Joe Reed died on November 12, 1988, and Dorothy Reed died on May 1, 1995. Their children, Clyde Day and Sunny Day Collins continue the Reed claims.
St. Charles General Hospital first raised the issue of prescription based on La. R.S. 9:5628 in July 1990. The district court granted the exception and dismissed plaintiffs' suit. The Reeds appealed to this Court, but the merits were not reached. The issue was found to be premature because the Reeds had challenged the constitutionality of La. R.S. 9:5628. This Court then vacated the district court's ruling and remanded the case for a Sibley[1] hearing on the constitutionality issue. This Court did note that the exception could be re-urged.
After St. Charles General Hospital filed its first exception of prescription, the Reeds amended their petition nine times to allege additional claims. In July 1992, the Reeds added a consumer protection claim under the Louisiana Unfair Trade Practices Act. The Reeds in an amended petition also alleged separate independent claims of medical malpractice against the Blood Center of Southeast Louisiana, Pathology Laboratory, Dr. Robert E. Treuting, M.D., Dr. M.G. Simpson, M.D., St. Paul Fire and Marine Insurance Company, and the Attorney General of Louisiana.
Ten years after this Court remanded the case for a Sibley hearing on the constitutionality of La. R.S. 9:5628, the Reeds had not pursued their claim. St. Charles General Hospital then re-filed the Exception of Prescription and Peremption in the instant case.
Six months after St. Charles General Hospital re-filed its exception, the Reeds enrolled additional counsel of record and raised two new arguments. The Reeds argued that their strict liability claims were not covered by the prescriptive period of La. R.S. 9:5628, and that any claims by Dorothy Reed were not covered by the statute because she was not a patient of St. Charles General Hospital.
The district court took the matter under advisement, and denied the exception. The district court in it's Reasons for Judgment agreed with the Reeds and stated that Dorothy Reed's claim was not subject to the prescriptive periods of La. R.S. 9:5628 because she had not been a patient of St. Charles General Hospital. The district court also stated that at the time of his blood transfusion Joe Reed could have brought a strict liability claim under the then applicable La. R.S. 9:2797; therefore, La. R.S. 9:5628 did not apply. The district court then applied the general rules of *321 prescription, and found that the Reeds' petition was timely filed within one year of the discovery of the alleged malpractice. The Relator, St. Charles General Hospital, timely seeks review of the judgment by the district court denying its Exception of Prescription rendered on April 30, 2001.

PRESCRIPTION
St. Charles General Hospital avers that the district court erred as a matter of law in failing to dismiss the Reeds' claim for damages because it had prescribed. We choose to address the issue of prescription with respect to the Respondents individually.

A. Prescription as to Mr. Joe Reed
The district court found that at the time of the blood transfusion, Mr. Reed was entitled to proceed in strict liability under the applicable version of La. R.S. 9:2797 and therefore his claim had not prescribed. We agree.
Mr. Reed's blood transfusion occurred on March 12, 1985. Prior to 1990, La. R.S. 9:2797 read as follows:
Strict liability of any kind without negligence shall not be applicable to physicians, dentists, hospitals, hospital blood banks, or nonprofit community blood banks in the screening, processing, transfusion, or medical use of human blood and blood components of any kind and the transplantation or medical use of any kind of human organ, human tissue, or approved animal tissue which results in transmission of viral diseases or any infectious agent undetectable by appropriate medical and scientific laboratory tests. (emphasis added)
In 1982, strict liability claims for blood transfusions were not abolished by statute, but were restricted to cases where viral diseases and infectious agents were "detectable" by appropriate medical and scientific tests. It was not until 1990 that strict liability for blood transfusions was statutorily abolished. Joe Reed received his transfusion in 1985. A patient's action in strict products liability arising out of a defective blood transfusion, which was received before enactment of the blood shield statutes, was not governed by the statute establishing the three-year prescriptive period for medical malpractice claims, but rather general tort prescriptive periods. Williams v. Jackson Parish Hospital, XXXX-XXXX (La.10/16/01), 798 So.2d 921. However, there remains a factual question to be addressed by the district court as to whether, as of the date of Mr. Reed's transfusion, HIV could be detected by appropriate medical or scientific laboratory tests before a determination can be made with respect to prescription of Mr. Reed's claim.
Joe Reed received his blood transfusion on March 12, 1985, and was diagnosed with AIDS on September 29, 1987. The Reeds filed their petition for damages on September 14, 1988. Mr. Reed filed his claim within a year of discovering that he had contracted AIDS potentially as a result of the blood transfusion that he received from St. Charles General. Thus, without a determination as to the medical and scientific detectability of HIV, we cannot ascertain whether Mr. Reed's claim has prescribed under La. R.S. 9:5628.

B. Prescription as to Mrs. Dorothy Reed
The district court found that La. R.S. 9:5628 did not apply to Dorothy Reed's claim because she was never a patient of St. Charles General Hospital. We agree.
La. R.S. 40:1299.41(A)(8) defines "malpractice" as:
[A]ny unintentional tort or any breach of contract based on health care or professional *322 services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs, medicines, or from defects in or failures or prosthetic devices, implanted in or used on or in the person of a patient. (emphasis added)
Further La. R.S. 40:1299.41(A)(3) defines "patient" as "a natural person who receives or should have received health care from a licensed health care provider, under a contract, express or implied".
Based on the definitions provided under La. R.S. 40:1299.41, we find that Mrs. Reed does not fall within the parameters of the definition of "patient". She did not receive health care from St. Charles General. Dorothy Reed was injured, and later died as a result of "patient care" extended to her husband, and not direct healthcare afforded to her. Notwithstanding the date of filing, Mrs. Reed's claim would not fall under the medical malpractice laws since she was never a patient of St. Charles General. We cannot justify holding a person accountable for potential illness when they had not been ill, had no direct interaction with the health care provider and had no inclination that they may be ill because of their interaction with a loved one who had been given health care. Therefore, the prescriptive period for delictual actions applies to Mrs. Reed's claim.
According to La. C.C. art. 3492, delictual actions are subject to a liberative prescription of one year. Since we have no date demonstrating when she actually contracted AIDS from her husband, we can only rely on the date that she discovered that she contracted AIDS as the date in which she sustained injury, which was in December of 1987. She filed the claim in September of 1988 within a year of having been injured.
Even if we had decided to consider Mrs. Reed was injured in March of 1985 when Mr. Reed's blood transfusion occurred, because her cause of action is delictual, the doctrine of contra non valentem would be invoked. Contra non valentem may suspend liberative prescription when the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Hendrick v. ABC Insurance Company, 2000-2403, p. 10 (La.5/15/01), 787 So.2d 283, 290.
Mrs. Reed had no way of knowing that she had contracted AIDS as a result of a blood transfusion given to her husband. She was not receiving health care and did not have a means of discovering her injury prior to being diagnosed. Therefore, Mrs. Reed's claim has not prescribed.

UNFAIR TRADE PRACTICE
St. Charles General also complains that the district court erred in not dismissing the Reeds' Unfair Trade Practices claim due to prescription.
La. R.S. 51:1405(A) provides:
A. Unfair Method of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
La. R.S. 51:1409, in part, provides:
A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.

*323 E. The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action.
This Court in Morris v. Sears, Roebuck and Co., 99-2772, p. 4 (La.App. 4 Cir. 5/31/00), 765 So.2d 419, 422 held that the prescriptive period for a private action under the Louisiana Unfair Trade Practice Act is peremptive. The district court in Safford v. PaineWebber, Inc., 730 F.Supp. 15, 19 (E.D.La. Feb.8, 1990) stated that because the doctrine of contra non-valentem does not apply to a peremptive period, Unfair Trade Practices claims based on acts that occurred over a year before suit was filed must be dismissed.
The Reed's raised their Unfair Trade Practices claim in July of 1992. Joe Reed's transfusion was in March of 1985. Therefore, the claim was based on acts that occurred over one year before suit was filed. Thus, we reverse the judgment of the district court and dismiss the Unfair Trade Practice claim.

DECREE
For the forgoing reasons, we remand to the district court for determination as to whether, as of the date of Mr. Reed's transfusion, HIV could be detected by appropriate medical or scientific laboratory tests in order for a decision to be rendered with respect to prescription as to Mr. Reed's claim. We find that Mrs. Dorothy Reed's claim has not prescribed. Further, we find that the Unfair Trade Practices claim has prescribed. Thus, the Relator's writ application is granted in part, denied in part and remanded.
WRIT Granted IN PART; DENIED IN PART AND REMANDED.
MURRAY, J., dissents with reasons.
PATRICIA RIVET MURRAY, J., dissenting.
I respectfully disagree with the majority's conclusion that the claim of neither Joe Reed, nor Dorothy Reed is prescribed.
As to the claim of Joe Reed, the majority relies upon Williams v. Jackson Parish Hosp., XXXX-XXXX (La. 10/16/01), 798 So.2d 921, to find that this is not a medical malpractice claim governed by La. R.S. 9:5628. The majority finds Jo Reed potentially has a "strict liability" claim under La. R.S. 9:2797, as it read in March 1985 at the time of his blood transfusion, if he can prove the disease he contracted was "detectable by appropriate medical and scientific laboratory tests."
In my opinion, the reliance on Williams, supra, is misplaced. Williams limited its holding to strict liability claims arising out of pre-1982 blood transfusion. The claim at issue is for a 1985 blood transfusion. Hence, Williams is not controlling.
The majority appears to have adopted plaintiffs' argument that the Legislature only partially abolished strict liability claims arising out of blood transfusions in 1982. However, this argument overlooks that an essential element of such a post-1982 "strict liability" claim is that the defendant could "detect" the disease in question by "appropriate scientific means." In other words, that there be constructive notice on the part of the defendant. This requirement of the 1982 blood shield statute that there be constructive notice effectively limits such claims arising out of the sale of defective blood to negligence claims for detectable diseases.
I, therefore, must respectfully disagree with the characterization of Mr. Reed's claim as a "strict liability" claim outside the scope of the medical malpractice prescriptive period set forth in La. R.S. 9:5628.
*324 I also disagree with the conclusion that, because of the lack of a patient relationship, Mrs. Reed's claim is not subject to the prescriptive period of § 5628. In my opinion, her claim, which arises out of the same operative facts as Mr. Reed's claim, likewise is barred by the three-year preemptive period set forth in § 5628.
NOTES
[1] Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La. Sept. 18, 1985).