PAUL A. BONIN, Judge.
 

 hMr. Joe Reed entered St. Charles General in 1985 and received a transfusion of blood contaminated with the human immunodeficiency virus (HIV). The virus did not manifest itself for several years during which time Mr. Reed, unknowingly but tragically, communicated the virus to his wife, Dorothy Reed.
 

 
 *1141
 
 On November 12, 1988 Mr. Reed died of AIDS, acquired immune deficiency syndrome. His wife’s death from AIDS followed on May 1,1995.
 

 Mr. and Mrs. Reed instituted these legal proceedings for compensation against the hospital and others. After their deaths, their children continued their parents’ litigation and sought compensation for the deaths of their parents. After almost 20 years of litigation, the children asked the district court to approve their petitions to settle their claims against the hospital so that they could obtain payments from the Patient’s Compensation Fund. The district judge approved the petitions. The PCF objects.
 

 12For the following reasons, we affirm in part, reverse in part, and remand the claim of Joe Reed to the district court for trial of damages in excess of the $100,000 settlement, pursuant to La. R.S. 40:1299.44(C)(5)(a).
 

 1 Statement of the Case
 

 The Reeds jointly and simultaneously instituted suit against St. Charles General Hospital in the Civil District Court and filed a medical malpractice claim -with the PCF on September 14, 1988. At that time, the PCF
 
 [1]
 
 advised that St. Charles General Hospital (“St. Charles General”) was a qualified healthcare provider under the Medical Malpractice Act. During the course of the pending lawsuit, the Reeds urged several theories of liability against St. Charles General, and also challenged the constitutionality of the Medical Malpractice Act (“Med Mai Act”) and related statutory provisions. After the deaths of the Reeds, their children were substituted as the parties plaintiff and by the tenth amending and supplemental petition sought recovery for the wrongful deaths of their parents against St. Charles General. St. Charles General was acquired by Tenet HealthSystems Hospitals, Inc., which was substituted as the party defendant.
 
 [2]
 

 This is the third time our court has visited this case. We review the two earlier visits in some detail as they bear upon and guide our decision.
 

 The first occasion was on direct appeal.
 
 Reed v. St. Charles General Hosp.,
 
 602 So.2d 784 (La.App. 4th Cir.1992). We refer to this matter as
 
 Reed I.
 
 Among several other issues this court addressed in
 
 Reed
 
 I was a lower court judgment that had granted the exception of prescription filed by St. Charles General. In reversing lsthe judgment, our court noted that the trial court had erred in two respects: first it had failed to allow the plaintiffs an opportunity to amend their petition to plead facts “relating to the third category of
 
 contra non valentem,
 
 as well as to add additional parties or cause of action”; and, second, it had failed “to hold the requisite evidentiary hearing (requested by Mrs. Reed) under
 
 Sibley v. Board of Supervisors of Louisiana State University,
 
 477 So.2d 1094, 1104 (La.1985).”
 
 Reed,
 
 602 So.2d at 786. The case was then remanded to the district court.
 

 The second occasion, almost ten years later, came to this court on an application for supervisory relief.
 
 Reed v. St. Charles General Hosp.,
 
 01-1148 (La.App. 4 Cir. 3/27/02), 815 So.2d 319.
 
 Reed II,
 
 as we refer to the second visit, treated the trial court’s denial of St. Charles General’s re-urged exception of prescription. Our court then decided the prescription issues
 
 *1142
 
 pertaining to Joe Reed’s claim separately from Dorothy Reed’s claim.
 
 [3]
 

 This court decided in Joe Reed’s case that the applicable prescriptive period for
 
 his
 
 claim, a “patient’s action in strict liability arising out of a defective blood transfusion, ... was not governed by the statute establishing the three-year prescriptive period for medical malpractice claims, but rather general tort prescriptive periods.
 
 Williams v. Jackson Parish Hosp.,
 
 00-3170 (La.10/16/01), 798 So.2d 921.”
 
 Reed
 
 p. 4, 815 So.2d at 321. However, because of the language of the version of La. R.S. 9:2797 which applied to Joe Reed’s case, it was necessary for the trier of fact to determine “whether as of the date of Mr. Reed’s transfusion, HIV could be detected by appropriate medical or scientific laboratory tests
 
 before
 
 a determination could be made with respect to prescription of Mr. |4Reed’s claim.”
 
 Id.
 
 (emphasis supplied). This court then remanded the exception of prescription as to Joe Reed’s claim to the trial court.
 

 As to the trial court’s denial of the exception of prescription as to Dorothy Reed’s claim, this court determined that because she had not been St. Charles General’s “patient”, as defined by La. R.S. 40:1299.41(A)(3), she was definitionally excluded from the applicability of the Medical Malpractice Act and, therefore, the general prescriptive period for delictual actions was applied to Dorothy Reed’s claim. Our court further found that her lawsuit was timely filed.
 
 Reed,
 
 p. 5, 815 So.2d at 322.
 

 Reed II
 
 also noted that despite the passage of ten years since the remand in
 
 Reed I
 
 directing a
 
 Sibley
 
 hearing on the constitutionality issues “the Reeds had not pursued their claim”.
 

 This third visit to our court has its beginnings in two distinct petitions for settlement approval filed by the Reeds’ heirs in late 2007 to settle the wrongful death and survival action claims regarding each parent against St. Charles General. St. Charles General answered the petition pertaining to Joe Reed unqualifiedly and agreed with the petitioners that the Med Mai Act applied. However, St. Charles General, while not objecting to the petition for settlement pertaining to Dorothy Reed, did not agree that the Med Mai Act applied in her case.
 

 The PCF responded by filing a petition to intervene, an exception of prematurity, an exception of prescription, a request for subpoena duces tecum, and a motion to continue hearing in the Joe Reed matter. The PCF responded by filing near identical pleadings
 
 mutatis mutandis
 
 as well as an exception of no cause or no right of action in the Dorothy Reed matter.
 

 |sThe trial court denied the petitions to intervene,
 
 [4]
 
 overruled the exceptions of prematurity
 
 [5]
 
 and of prescription,
 
 [6]
 
 quashed the subpoena duces tecum, denied the motions to continue conditionally, and overruled the exception of no cause or no right of action as to Dorothy Reed’s claim.
 
 [7]
 
 Over the objections of the PCF, the trial court approved both settlement petitions.
 

 The PCF filed four separate applications for supervisory relief and also filed motions for devolutive appeal from all of the
 
 *1143
 
 signed judgments.
 
 [8]
 
 The PCF has assigned twenty-six errors by the trial court for our consideration. The four writ applications and the two appeals have been consolidated.
 

 2 Standing of the PCF
 

 Before specifically addressing the assignments of error filed by the PCF, we first determine its standing to object to the petitions for settlement. The PCF is a creature of the Legislature. La. R.S. 40:1299.41(A)(5), (19), and (20), (I) and (J); La. R.S. 40:1299.42; La. R.S. 1299.43(A)(4), (C) through (J), and La. R.S. 40:1299.44.
 

 In
 
 Williams v. Kushner,
 
 549 So.2d 294, 296 (La.1989) the Louisiana Supreme Court noted:
 

 The legislature had the power to establish the fund and provide a supplemental recovery for those more seriously injured by medical malpractice.... The fund is not a negligent party and does not have the status of an Article 2315 defendant.
 

 This determination by the Supreme Court is instructive and dispositive in the resolution of the issues presented by the objections of the PCF. The Med Mal Act, 6La. R.S. 40:1299.41
 
 et seq.,
 
 in which the duties and obligations of the PCF are treated, provides in Subsection (I) in pertinent part that
 

 Nothing in this Part shall be construed to make the patient’s compensation fund liable for any sums except those arising from medical malpractice ....
 

 The Med Mal Act has provisions, on the other hand, which prevent the PCF from challenging certain aspects of settlements entered into between the patient and the health care provider. For example, La. R.S. 40:1299.44(C)(5)(e) provides:
 

 In approving a settlement or determining the amount, if any, to be paid from the patient’s compensation fund, the trier of fact shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
 

 Another pertinent example of a critical restriction on the PCF is set forth in La. R.S. 40:1299.44(0(6):
 

 Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil court case tried by the court.
 

 3 No Cause of Action as to Dorothy Reed
 

 The PCF argues that the trial court erred in overruling its exception of no cause or right of action to the petition for settlement of Dorothy Reed’s claim. The petition to settle her claim alleged that the Med Mai Act applied to her claim. St. Charles General did not agree with that assertion, although it agreed to the settlement. This exception asserted the position of the PCF that, since Dorothy Reed had not been a “patient” of St. Charles General, the Med Mai Act does not apply. If the Med Mai Act does not apply, then her heirs are not entitled to claim any payment from the PCF.
 

 17Because the Med Mai Act “is special legislation in derogation of the rights of tort victims, it must be strictly construed against limiting the victim’s rights against the tortfeasor.”
 
 Ginn v. Woman’s
 
 
 *1144
 

 Hospital Foundation, Inc.,
 
 02-1913, p. 10 (La.4/9/03), 842 So.2d 338, 344 (citations omitted).
 

 The Supreme Court in
 
 Williamson v. Hospital Service District No. 1 of Jefferson,
 
 04-0451, p. 5 (La.12/1/04), 888 So.2d 782, 786 reiterated the point:
 

 This court has, without exception, emphasized that the MMA and its limitations on tort liability for a qualified health care provider apply strictly to claims “arising from medical malpractice,” La.Rev.Stat. 40:1299.41(1), and
 
 that all other tort liability on the part of the health care provider is governed by general tort law.
 
 [citations omitted] In
 
 Sewell [,v. Doctors Hosp.,
 
 600 So.2d 577 (LA.1992)], we explained:
 

 The Medical Malpractice Act’s limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. As such, the coverage of the Act should be strictly construed.
 
 These limitations apply only in cases of liability for malpractice as defined in the Act.
 
 Any other liability of the health care provider to the patient is not subject to these limitations. (all emphasis supplied)
 

 The Med Mai Act in effect at the time of the blood transfusion defined “malpractice” at La. R.S. 1299.41(A)(8):
 

 “Malpractice” means any unintentional tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider,
 
 to a patient,
 
 and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, medicines, or from defects in or failures or prosthetic devices, implanted in or used on or in
 
 the person of a patient,
 
 (emphasis supplied)
 

 The applicable version of La. R.S. 40:1299(A)(3) defined a “patient” as “a natural person, who receives or should have received health care from a licensed health care provider, under contract, expressed or implied.”
 

 |sMrs. Dorothy Reed was not a “patient” and therefore is not covered by the Med Mai Act.
 
 [9]
 
 This is precisely what we held in
 
 Reed II
 
 when we found that Mrs. Reed’s claim was not prescribed because her claim was
 
 not
 
 within the coverage of the Med Mai Act:
 

 Based on the definitions provided under La. R.S. 40:1299.41, we find that Mrs. Reed does not fall within the parameters of the definition of “patient”. She did not receive health care from St. Charles General. Dorothy Reed was injured, and later died as a result of “patient care” extended to her husband, and not direct healthcare afforded to her. Notwithstanding the date of filing, Mrs. Reed’s claim would not fall under the medical malpractice laws since she was never a patient of St. Charles General. We cannot justify holding a person accountable for potential illness when they had not been ill, had no direct interaction with the health care provider and had no inclination that they may be ill because of their interaction with a loved one who had been given health care. Therefore, the prescriptive period for delictual actions applies to Mrs. Reed’s claim.
 

 Reed v. St. Charles Gen. Hosp.,
 
 01-1148, p. 5, 815 So.2d at 322.
 

 
 *1145
 
 Mrs. Reed’s claimants urge us to consider our court’s decision in
 
 Clark v. Baird,
 
 97-1025 (La.App. 4 Cir. 5/20/98), 714 So.2d 840. In
 
 Clark
 
 the patient had been stuck accidentally with a contaminated needle by her physician. She contracted Hepatitis C. Her husband intervened in the suit, alleging that his wife unknowingly sexually transmitted Hepatitis to him. The health care provider excepted to the husband’s intervention on the grounds that he must first submit to a medical review panel pursuant to the Med Mai Act. This court decided that the Med Mai Act did not apply to the husband:
 

 [The intervenor] clearly does not fall within the Malpractice Act definition of patient. He neither received health care from defendants, nor did he have an express or implied contract with defendants. He had no relationship with the defendants whatsoever.
 

 9Clark,
 
 97-1025 p. 11, 714 So.2d at 845.
 
 Reed II,
 
 and our holding today, are consistent with the Clark decision.
 
 [10]
 

 In line with the Supreme Court jurisprudence, we emphasize that Dorothy Reed’s claim is covered by the general tort law. There is no authority for us to extend the Med Mai Act to persons whose rights have not been restricted by its express provisions.
 

 The PCF filed peremptory exceptions of no cause of action and no right of action to the petition to settle Dorothy Reed’s claim. La. C.C.P. art. 927(A)(5) and (6). We find that the exception of no cause of action is an appropriate pleading in Dorothy Reed’s case because of the application of the principle of the “law of the case”.
 

 The “law of the case” principle bars the plaintiffs from reasserting the applicability of the Med Mal Act. Law of the case is “... a doctrine whereby an appellate court will not reconsider its prior rulings on an issue in a subsequent appeal in the same case.”
 
 Roccaforte v. Nintendo of America, Inc.,
 
 05-239, p. 8 at fn.4 (La.App. 5 Cir. 11/29/05), 917 So.2d 1143, 1148. Generally, when an appellate court considers arguments made in supervisory writ applications or responses to such applications, the court’s disposition on the issue considered becomes the “law of the case,” foreclosing relitigation of that issue either in the trial court on remand or in the appellate court on a later appeal. See,
 
 Easton v. Chevron Indus., Inc.,
 
 602 So.2d 1032, 1038 (La.App. 4th Cir.1992). “The doctrine also applies to previous decisions | inon writ applications as well as full appellate proceedings.”
 
 Roccaforte, supra.;
 
 see also
 
 Andry v. Murphy Oil, U.S.A., Inc.,
 
 05-0126, p. 18 (La.App. 4 Cir. 6/14/06), 935 So.2d 239, 251.
 

 Applying the “law of the case” doctrine, we conclude that in this case no cause of action for payment from the PCF can be stated because Dorothy Reed, we have already determined, was not a patient and therefore her claim was not within the scope of the Med. Mal. Act. La. R.S. 40:1299.41(1), as earlier observed, provides that
 
 “[njothing
 
 in this Part shall be construed to make the patient’s compensation fund liable for any sums except those aris
 
 *1146
 
 ing from
 
 medical malpractice.”
 
 (emphasis supplied).
 

 On the one hand, recovery for Dorothy Reed’s claim is not limited by the “caps” of the Med Mai Act. On the other hand, she cannot avail herself of the funds in the PCF.
 
 [11]
 

 The PCF must have the opportunity to object at this stage of the proceedings to protect the integrity of its fund.
 
 [12]
 
 Our conclusion in this regard is guided by the Louisiana Supreme Court case of
 
 Bennett v. Krupkin,
 
 01-0209 (La.10/16/01), 798 So.2d 940. In
 
 Bennett,
 
 a health care provider filed an exception of prematurity alleging the Med Mai Act was applicable and that the plaintiffs first needed to send their case to a medical review panel. Without objection by the plaintiffs or the health care provider, the trial court permitted the PCF to intervene in the malpractice action. Subsequently, the PCF filed a motion for summary judgment claiming the physician did not purchase the appropriate insurance coverage prior to the loss and, as such, | nwas not a “health care provider” as defined under the Med Mai Act. It argued the Act was not applicable. The plaintiffs filed a motion for summary judgment asserting that there was insurance coverage for the loss and the Med Mai Act applied under the facts. The trial court granted the physician’s exception of prematurity, and reserved the plaintiffs’ rights to pursue a malpractice claim under the Med Mai Act upon completion of the medical review panel process. The trial court also granted partial summary judgment in favor of the plaintiffs and denied the PCF’s motion for summary judgment finding that there was appropriate insurance coverage for the alleged malpractice. When the PCF filed a motion for new trial, the plaintiffs opposed it, for the first time, arguing the PCF lacked standing to raise the issues. The trial court denied the motion and the Louisiana First Circuit Court of Appeal dismissed the appeal of the PCF stating that it was unable to find any statutory or jurisprudential basis for allowing the PCF to appeal.
 

 In
 
 Bennett,
 
 the Louisiana Supreme Court granted supervisory writs to determine whether the PCF could appeal a trial court’s ruling granting an exception of prematurity filed by a health care provider when the health care provider and the plaintiff have not challenged the judgment granting the exception. In concluding that the PCF could appeal the trial court’s ruling, the Supreme Court recognized that under the Med Mai Act, the PCF has the responsibility and authority to manage and defend the fund, citing Louisiana Revised Statutes 40:1299.44(A)(5)(b), 40:1299.44(D)(2)(a) and 40:1299(D)(2)(b)(x). The Supreme Court relied on the procedural articles pertaining to intervenors and their right to appeal, holding:
 

 Article 1091 provides that “[a] third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by: ... (3) Opposing both plaintiff and defendant.” La. C.C.P. art. 1091. Article 2086 provides that “[a] person who could |12have intervened in the trial court may appeal, whether or not any other appeal has been taken.” La. C.C.P. art.2086.
 
 As a party who could have, and did, intervene in the trial court, the Board
 
 
 *1147
 

 has a right to appeal under La. C.C.P. ari.2086.
 
 Finally, Article 2083 provides in part that “[a]n appeal may be taken from a final judgment rendered in causes in which appeals are given by law ...” La. C.C.P. art.2083. The judgment granting Dr. Krupkin’s exception of prematurity was a “final judgment.” Further, La. R.S. 40:1299.44(D)(2)(b)(x) specifically gives the Board the authority to defend the Fund from all claims due to the negligence of a non-covered health care provider, which, in our view, includes opposing an exception of prematurity filed by a doctor on the grounds that the doctor is a “non-covered health care provider.”
 

 The Board dearly has an interest in this action to daim that Dr. Krupkin is not a qualified health care provider, in that, if Dr. Krupkin is found to be a qualified health care provider, the Board could be liable for the amount of any judgment over $100,000.00.
 
 In fact, the Board is statutorily required to notify the claimant within 15 days of the receipt of the claim whether or not the named health care provider is qualified under the MMA. La. R.S. 40:1299.47(A)(3). Accordingly, the Board notified the plaintiffs and Dr. Krupkin that he was not a qualified healthcare provider based on their records and the plaintiffs then filed their suit in the district court.
 

 Bennett,
 
 pp. 6-7, 798 So.2d at 944 (emphasis supplied).
 

 In this case, the standing of the PCF to make its objection directly, without the need of an intervention, is clear in light of the settlement pursuant to Louisiana Revised Statute 40:1299.44(0(5).
 
 See Koslowski v. Sanchez,
 
 576 So.2d 470 (La.1991),
 
 overruled on other grounds, Russo v. Vasquez,
 
 648 So.2d 879 (La.1995);
 
 Felix v. St. Paul Fire and Marine Ins. Co.,
 
 477 So.2d 676 (La.1985).
 

 We are mindful of jurisprudence holding that the PCF is not a party defendant and cannot participate in the proceedings absent a judgment or settlement in excess of $100,000. See
 
 Payne v. N.O. Gen. Hosp.,
 
 611 So.2d 777, 780 (La.App. 4th Cir.1992);
 
 Kelty v. Brumfield,
 
 534 So.2d 1331, 1333-34 (La.App. 4th Cir.1988). However, we do not view the claims of the PCF in the instant matter entirely as an objection to the actual settlement of liability between Mrs. Reed’s survivors and St. Charles General. Specifically, with the filing of its exception and objection of no |]Scause of action in response to the petition for approval of settlement of the claim relative to Mrs. Reed, the PCF objected to the settlement on the basis that the statutory requirement that the claimant be a “patient” was not satisfied under the strict requirements of the Med Mal Act and, thus, the Med Mal Act does not apply. See La. R.S. 40:1299.41(A)(3).
 

 Applying the reasoning of
 
 Bennett,
 
 we conclude that there is nothing to bar the PCF from objecting, by an exception of no cause of action to the approval of the settlement that might result in a claim against the PCF for an amount in excess of the settlement:
 

 ...
 
 [I]n this case and at this stage, the contested issue is whether or not this case properly falls under the MMA at all,
 
 i.e., whether Dr. Krupkin met the requirements of the MMA to be deemed a qualified healthcare provider entitled to the benefits of the MMA.
 
 Nothing in the jurisprudence suggests that the Board has no right to argue its position that the health care provider is not a qualified health care provider under the MMA, even in the early stages of this type of litigation ...
 

 
 *1148
 
 [[Image here]]
 

 The Board has asserted that Dr. Krupkin is not a qualified health care provider on numerous occasions, i.e., after the Bennetts filed their medical malpractice complaint with the Board, in its petition of intervention seeking a decision as to whether Dr. Krupkin was covered by the MMA, in its motion for summary judgment, in its opposition to Dr. Krupkin’s exception of prematurity, in its Motion for New Trial on Dr. Krup-kin’s exception of prematurity, and in its appeal of that judgment.
 
 The Board is clearly an interested party entitled to intervene and appeal under the intervention statutes, and, in fact, has the duty to defend the Fund under La. R.S. W:1299.U(A)(5)(b), La. R.S. 40:1299.H(D)(2)(a), and La. R.S. 40:1299.II(D)(2)(b)(x). This is particularly evident here, where the Board is the only party or entity claiminy that the health care provider is not a qualified health care provider entitled to coveraye under the MMA
 
 Accordingly, we find that the Board has standing to appeal the trial court’s judgment granting Dr. Krupkin’s exception of prematurity.
 

 Bennett,
 
 pp. 9-10, 798 So.2d at 946 (emphasis supplied.)
 

 We conclude, in light of our earlier ruling, that the trial court erred in 114entertabling and approving the settlement for the wrongful death of Mrs. Reed under the Med Mai Act. The plaintiffs do not have a cause of action under the Med Mai Act that would warrant, or even require, the trial court’s approval of the settlement. To the extent that the trial court’s judgment of February 26, 2008 reserves any rights against the PCF or provides for any further proceedings against the PCF by Dorothy Reed’s survivors, such provisions of the judgment are vacated. The exception of no cause of action filed by the PCF in response to the Dorothy Reed petition for settlement is sustained.
 

 Accordingly, we grant the writ application in # 2008-C-0572 and reverse the trial court’s judgment overruling the exception of no cause of action.
 

 4 Exception of Prescription as to Joe Reed
 

 The PCF filed an exception of prescription to the claim of Joe Reed.
 
 [13]
 
 Unlike the no cause of action exception relative to Dorothy Reed’s claim, this exception is not directed to the petition for settlement, but rather to the underlying cause of action. The PCF contends that Joe Reed filed his lawsuit after the applicable prescriptive date and he therefore can have no recovery against the PCF. Joe Reed’s children argue that the PCF has no standing to raise the prescription issue; the settlement of his claim with St. Charles General, they argue, mooted any prescriptive defenses.
 

 As noted earlier, this is third time we have visited the issue of prescription regarding the claim of Joe Reed. St. Charles General previously argued that Joe Reed’s claim was prescribed. In
 
 Reed I
 
 we remanded the issue because there had been no
 
 Sibley
 
 determination of the constitutionality of the Med Mai Act and its prescriptive periods. In
 
 Reed II
 
 we remanded the issue because of a factual issue concerning “detectability” of HIV in blood at the time of the transfusion in 1985.
 

 
 *1149
 
 The Louisiana Supreme Court in
 
 Koslowski,
 
 576 So.2d at 474 held:
 

 When the insurer has admitted liability up to the statutory maximum, the liability of the health care provider is established, and the only remaining issue is the damages, if any, owed by the patient’s compensation fund. The fund cannot contest liability when there is a binding settlement for $100,000 by the health care provider, either before or after trial.
 

 This court has consistently held that once the health care provider and the claimant agree on a settlement of $100,000.00 paid by the health care provider to the claimant, the PCF is without standing to raise prescription as a bar to further payment by the PCF. The underlying doctrinal basis for our court’s rejection of the PCF’s urging the exception of prescription once there has been a settlement by the health care provider of its maximum liability is set out in
 
 Kelty,
 
 534 So.2d at 1334 “where the settlement is for the maximum amount, the statute is clear that
 
 liability
 
 is admitted.” (emphasis added). Under those circumstances the only course left to the PCF is to contest the amount of damages it must pay from the Fund.
 
 See also Schwarzenburg v. Jackson,
 
 600 So.2d 163 (La.App. 5th Cir.1992) in which the PCF was not allowed to intervene to contest liability between the time of settlement and the time of the approval of the settlement by the court.
 

 In
 
 Rey v. St. Paul Fire and Marine Insurance Company,
 
 95-0661 (La. App. 4 Cir. 11/16/95), 665 So.2d 109, 111, this court reiterated its holding in
 
 Kelty
 
 and held: “Thus, once the insurer has paid its policy limits, statutory liability is admitted and the [PCF] has no standing to raise the issue of prescription.” The PCF has no standing to raise the exception of prescription before or after a | ^settlement in the maximum amount of the health care provider’s limited liability.
 
 [14]
 
 The PCF may raise prescription only if there is a settlement for
 
 less
 
 than the health care provider’s maximum liability. See, e.g.,
 
 St. Romain v. Luker,
 
 00-1366 (La.App. 1 Cir. 11/9/01), 804 So.2d 85.
 

 As noted in
 
 Williams v. Kushner,
 
 549 So.2d at 296 (La.1989) the PCF “is not a negligent party and does not have the status of an Article 2315 defendant.” The Supreme Court later held that the Med Mai Act “contemplates that the issue of liability is generally to be determined between the malpractice victim and the health care provider, either by settlement or by trial, ...”
 
 Stuka v. Fleming,
 
 561 So.2d 1371, 1374 (La.1990). Prescription is a means to avoid liability.
 
 LeBreton v. Rabito,
 
 97-2221 (La.7/8/98), 714 So.2d 1226. The exception of prescription was for St. Charles General alone to urge. La. C.C.P. art. 927(A)(1) and (B). Prescription prevents only the enforcement of a right by legal action, but does not terminate the natural obligation.
 
 Brumfield v. McElwee,
 
 07-0548, p. 9 (La.App. 4 Cir. 1/16/08), 976 So.2d 234, 241.
 

 Here the trial judge approved the settlement between St. Charles General and the
 
 *1150
 
 claimants. “Any settlement approved by the court shall not be appealed.” La. R.S. 40:1299.44(0(6). Based upon our holdings in
 
 Kelty
 
 and
 
 Rey,
 
 we conclude that the trial judge did not err in overruling the exception of prescription |17filed by the PCF. The PCF had no standing to raise prescription under these circumstances.
 
 [15]
 

 Accordingly, in writ application # 2008-C-0570, we grant the application but deny the PCF the relief that it seeks.
 

 5 Petition for Intervention Filed by the PCF
 

 The PCF argues that the trial court erred in refusing to permit it to intervene in the petitions for settlement. The PCF contends that its interests were indispensable to a proper adjudication of the settlement petitions and that it was entitled as a matter of statutory right to intervene because there was a constitutional challenge to the Med Mai Act.
 

 The plaintiffs filed distinct petitions for settlement of the claims pertaining to Joe Reed and to Dorothy Reed. These petitions were filed pursuant to La. R.S. 40:1299.44(C). There is no dispute that St. Charles General was a qualified health care provider under the Medical Malpractice Act, La. R.S. 40:1299.41
 
 et seq.,
 
 and as such was eligible for the special benefits provided by the Med Mai Act. Of course, the principal substantive benefit enjoyed by a qualified health care provider under the Med Mai Act is a limitation of its liability pursuant to La. R.S. 40:1299.42. Therefore, St. Charles General’s liability was limited to, or “capped” at, $100,000.00 “for all malpractice claims because of injuries to or death of any one patient” under the version of La. R.S. 40:1299.42(B)(2) in effect at the time Joe Reed was a patient at St. Charles General in 1985. The total amount recoverable
 
 if the Med Mai Act applied
 
 could not exceed $500,000.00 plus interest and costs. La. R.S. 40:1299.42(B)(1).
 

 lisAny difference between the $100,000.00 limitation for St. Charles General and the maximum recovery of $500,000.00 plus interest and costs is to be paid by the PCF “pursuant to the provisions of R.S. 40:1299.44(0.” La. R.S. 40:1299.42(B)(3)(a).
 

 Subsection C provides,
 
 inter alia,
 
 that if St. Charles General’s insurer and the claimants desire to settle a claim for the limits of St. Charles General’s liability policy while demanding additional excess payment, the claimant shall prepare a “petition” which includes “sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.” La. R.S. 40:1299.44(0(2). A copy of this petition is to be “served” on the PCF, the health care provider and its insurer at least 10 days
 
 before
 
 filing.
 
 Id.
 
 Upon the expiration of the 10 day period, since the lawsuit was already pending in this matter, the petition was to be filed in the Civil District Court. La. R.S. 40:1299.44(0(1).
 

 Subsection C(3) provides that the PCF may either agree to the settlement demanded or “may file written
 
 objections
 
 to the payment of the amount demanded. The agreement
 
 or objections
 
 to the payment demanded shall be filed within twenty days after the petition is filed.” (emphasis added). There is no definition or further explanation of the term “objections”.
 

 Subsection C(4) requires the judge to set the date on which the petition shall be
 
 *1151
 
 heard expeditiously and to notify the PCF, among others, “thereof as provided by law.”
 

 It is clear from the procedure set out in these subsections that the proceeding on the petition for settlement is a summary proceeding.
 
 [16]
 
 La.C.C.P. arts. 2591
 
 et _|^2seq.
 
 It is designed to be conducted with “rapidity”. The term “objections” is found in connection with exceptions. La. C.C.P. arts. 925-927.
 

 While the PCF is not a party to the underlying lawsuit, it does have standing to file “objections” to the petition for settlement under these subsections and to further participate in the expedited hearing.
 

 The question then becomes what, if any, harm or disadvantage has the PCF suffered by reason of the trial court’s refusal to permit it to intervene in the underlying litigation. “An intervenor cannot object to the form of the action, the venue, or to any defects and informalities personal to the original parties.” La. C.C.P. art. 1094. Therefore, if the PCF were to be merely an “intervenor”, many of the objections otherwise available to it by way of exceptions would be unavailable under article 1094. We conclude that the trial judge was correct when she denied the intervention of the PCF to contest liability.
 
 Payne, supra.
 

 |2ftAn issue related to its motion to intervene is the contention of the PCF that it has a statutory right provided for in La. R.S. 40:1299.44(D)(2)(b)(xii), which gives it
 
 *1152
 
 the authority to [i]ntervene as a matter of right, at its discretion, in any civil action or proceeding in which the constitutionality of this Part [Med Mal Act], R.S. 9:5628, R.S. 9:5628.1 or any other Louisiana law related to medical malpractice as defined in this Part is challenged.”
 

 In
 
 Reed I
 
 our court remanded the case in order for the trial court to conduct a
 
 Sibley
 
 hearing to determine the constitutionality of the Med Mai Act, its limitations on liability, and its prescriptive periods. Ten years later in
 
 Reed II
 
 our court commented that the plaintiffs in the intervening years had not pursued their constitutional claims. The court implied both in its comment and in its disposition of the action, remanding the prescription issue without any mention of the claim of unconstitutionality, that the plaintiffs had abandoned their right to a
 
 Sibley
 
 hearing.
 

 The plaintiffs attached to their brief a copy of a letter from an assistant attorney general which purports to memorialize their counsel’s statement made in open court but not on the record that “the plaintiffs were dropping their challenges to the constitutionality of ‘all caps’ and to the ‘peremptive’ statute.” In their brief they agree that their counsel “in open court, specifically stated that Plaintiffs would not challenge the constitutionality of the Medical Malpractice Act”.
 

 Moreover, our disposition of the claim of Dorothy Reed moots any constitutional challenge to the Med Mai Act as its coverage does not extend to her claim.
 

 Finally, and most importantly, no constitutional challenge to the Med Mai Act survives the final settlement with and release of St. Charles General in Joe Reed’s claim.
 
 Williams v. Kushner, supra.
 
 Expressly relying upon the holding in 21
 
 Williams,
 
 we held in
 
 Tipton v. Campbell,
 
 08-0139, p. 31 (La.App. 4 Cir. 9/24/08), 996 So.2d 27, 47,
 
 writ denied,
 
 08-2564 (La.1/9/09), 998 So.2d 720, “the limitation of the PCF’s liability in this case to $400,000 is not subject to constitutional challenge.” The claimants have settled and released the only party, St. Charles General, whose limitation of liability could have been challenged at the
 
 Sibley
 
 hearing. As we held in
 
 Tipton,
 
 that settlement renders their constitutional challenge moot.
 

 For these reasons, the plaintiffs no longer have a right to contest the constitutionality of the Med Mai Act, or the related statutes delineated in subsection D(2)(b)(12), and there can be no
 
 Sibley
 
 hearing. The PCF is not entitled to intervene as a matter of right pursuant to that subsection as no issue of constitutionality survives the settlement for Joe Reed and we have determined that Dorothy Reed’s claims are not subject to the limitations of the Med Mai Act and related acts.
 

 Accordingly, in writ application # 2008-C-0573, we grant the application but deny the PCF the relief which it seeks.
 

 6 Exception of Prematurity
 

 The PCF filed an exception of prematurity to the petition for settlement in Joe Reed’s claim.
 
 [17]
 
 The PCF argues that the trial court’s consideration of the settlement petition was “premature” because (1) the PCF was not properly served with the Rule to Show Cause, (2) the trial court held the settlement approval 28 days before it considered its exceptions, (3) the settlement approval hearing datej^did not give the PCF adequate time to prepare, and (4) the PCF did not have the benefit of documentation it had subpoenaed.
 

 
 *1153
 
 An exception of prematurity to a petition for approval of a settlement would lie if the claimants filed their petition
 
 before
 
 the expiration of the 10-day delay provided by statute. La. R.S. 40:1299.44(0(2); La. C.C.P. art. 926(A)(1). The evidence before us clearly establishes that the PCF received a copy of the petition on December 29, 2007; the petition was not filed with the court until January 9, 2008.
 

 The ground for its objection in the first instance is that it was not properly served with the hearing date. This ground is properly raised by the declinatory exception of insufficiency of service of process. La. C.C.P. art. 925(A)(2). Since the PCF did not raise this exception, it is waived. La. C.C.P. art. 925(C). Moreover, counsel for the PCF appeared at the hearing for which it claims lack of proper service. That appearance itself constitutes a waiver unless specifically pleaded therein.
 
 In Re: Medical Review Panel for Claimant Brunet,
 
 578 So.2d 1011, 1013 (La.App. 4th Cir.1991).
 

 Reading subsections C(3) and (4)
 
 in pari materiae,
 
 we conclude that the only restriction on the trial court in setting the heai’ing date for consideration of approval of the settlement is that the health care provider’s insurer and the PCF are afforded 20 days within which to file any objections after the petition is filed. Recalling that a copy of the petition is served on the PCF at least 10 days before its filing, this affords the PCF a minimum of 30 days within which to file its objections from the time it receives actual notice of the petition to settle.
 

 The petition was filed on January 9, 2008 and the hearing was set for February 1, 2008. The statutorily required delay was adhered to by the trial court.
 

 |23Since the petition for approval is a summary proceeding, any exceptions to the proceeding were required to be taken up
 
 before
 
 the hearing itself. La. C.C.P. art. 2593 provides:
 

 A summary proceeding may be commenced by the filing of a contradictory motion or by a rule to show cause, except as otherwise provided by law.
 

 Exceptions to a contradictory motion, rule to show cause, opposition, or petition in a summary proceeding shall be filed prior to the time assigned for, and shall be disposed of on, the trial. An answer is not required, except as otherwise provided by law.
 

 No responsive pleadings to an exception are permitted.
 

 Any delay in the trial court’s consideration of the exceptions are attributable to the PCF itself in improperly seeking (and obtaining) a date for hearing on its own exceptions at a time other than the approval hearing.
 

 The two final grounds urged by the PCF for its “prematurity” exception are that it did not have time to prepare and it did not obtain subpoenaed materials. These grounds would not render the petition
 
 premature.
 
 Additionally, the PEC has not demonstrated a particular need it was unable to meet in preparing for the approval hearing. Regarding Joe Reed’s claim, the only “preparation” was to file a timely objection to a payment to his claimants from the PCF without the benefit of a trial to determine the amount of damages. La. R.S. 40:1299.44(C)(5)(a) provides that
 
 if
 
 the PCF objects to any settlement from the PCF, the court is to schedule a “subsequent trial” at a time after the PCF has had an opportunity to conduct discovery and related activities; the PCF can even demand a trial by jury at that time. The trial court properly went forward with a hearing on February 1, 2008 and the exception of prematurity was properly overruled. The petition was not premature
 
 *1154
 
 and any objection to proper notice was waived.
 

 12.i Accordingly, in writ application # 2008-C-0571, we grant the application but deny the PCF the relief which it seeks.
 

 7 The Devolutive Appeals
 

 The PCF, in addition to its multiple applications for supervisory relief, also filed a devolutive appeal in the Joe Reed claim. We have examined each of the judgments which the PCF has included in its appeal of the Joe Reed claim. All of the judgments, with the exception of the denial of the petition to intervene, are interlocutory. La. C.C.P. art. 1841 (“A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.”). The denial of the petition to intervene is a partial final judgment under La. C.C.P. art. 1915(A)(1). It requires no designation as final in order for the PCF to appeal. La. C.C.P. art.1911.
 

 We have already determined the merits of the ruling on the intervention in Joe Reed’s claim and affirm the trial court.
 

 As to the interlocutory judgments relative to the motion to continue the settlement hearing and the motion to quash the subpoena duces tecum, the appeals from those judgments are dismissed. Turning to the judgments devolutively appealed in the Dorothy Reed claim, we affirm the trial court’s ruling on the petition for intervention and we dismiss the appeals of the interlocutory judgments.
 

 8 Decree
 

 The trial court’s ruling in the Dorothy Reed claim overruling the exception of no cause of action filed by the PCF is reversed and the exception is sustained.
 
 [18]
 
 The Dorothy Reed claimants’ settlement petition is dismissed with prejudice Rsmsofar as it seeks any payment from the PCF, and the trial court judgment is reversed and vacated insofar as it purports to reserve rights for payment from the PCF or further proceedings against the PCF.
 

 The trial court’s rulings in the Joe Reed claim overruling the exception of prescription and the exception of prematurity as well as its denial of the petition for intervention filed by the PCF are affirmed.
 
 [19]
 

 Any appeal from any other judgment or ruling appealed from in the devolutive appeal motion filed by the PCF is dismissed as not appealable.
 
 [20]
 

 The claim of Joe Reed is remanded for further proceedings pursuant to La. R.S. 40:1299.44(C)(5)(a), if they have not already commenced.
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 [1]
 

 . PCF refers both to the formal name of the Patient’s Compensation Fund Oversight Board as well as to the fund itself. We use PCF interchangeably to represent both the Board and the Fund throughout this opinion.
 

 [2]
 

 . In this opinion we reference the original name of the defendant, St. Charles General Hospital.
 

 [3]
 

 .
 
 Reed II,
 
 in addition to the separate treatment of the prescription issues, dismissed the Reeds' claim for unfair trade practices as prescribed.
 
 Reed,
 
 p. 6, 815 So.2d at 321-322.
 

 [4]
 

 . Writ application # 2008-C-0573.
 

 [5]
 

 . Writ application # 2008-C-0571.
 

 [6]
 

 . Writ application # 2008-C-0570.
 

 [7]
 

 . Writ application # 2008-C-0572.
 

 [8]
 

 . The appeal for Joe Reed is # 2008-CA-0430 and for Dorothy Reed is # 2008-CA-0431.
 

 [9]
 

 . The plaintiffs filed a "Tenth Supplemental and Amended Petition for Damages” alleging that "at all relevant times hereto, Mrs. Reed was not a patient of St. Charles, and she was neither treated by, nor received health care from St. Charles. As a result, her claims and causes of action (and those derived there from) are not subject to the provisions of the Medical Malpractice Act or to the limitation periods of La. R.S. 9:5628.”
 

 [10]
 

 . The
 
 Clark
 
 decision did discuss the Third Circuit's case of
 
 Trahan v. McManus,
 
 96-669 (La.App. 3 Cir. 2/19/97), 689 So.2d 696, which was reversed by the Supreme Court after Clark was decided. See
 
 Tranhan v. McManus,
 
 97-1224 (La.3/2/99), 728 So.2d 1273. The Supreme Court held that “bystander" damages under La. Civil Code art. 2315.6 due to malpractice were covered by the Med Mai Act. As in Clark, Mrs. Reed’s injuries were not limited to emotional distress derived from viewing the negligent act.
 
 She
 
 suffered and died from AIDS. Her injuries were
 
 physical
 
 as well as mental.
 

 [11]
 

 . Si. Charles General actually settled Dorothy Reed's claims for $400,000. The settlement obviously did not limit itself to the Med Mai Act's cap for a health care provider.
 

 [12]
 

 .
 
 The available funds should not be reduced or depleted in order to pay claims of victims whose claims were not subject to the Med Mai Act's limitations on recovery.
 

 [13]
 

 . The PCF also filed an exception of prescription as to the claim of Dorothy Reed. However, because we determined that the exception of no cause of action was meritorious it is not necessary for us to consider the exception of prescription as to Dorothy Reed's claim.
 

 [14]
 

 . In accord is
 
 McGrath v. Excel Home Care, Inc.,
 
 01-1270 (La.App. 5 Cir. 3/26/02), 810 So.2d 1283,1288, wherein it was stated:
 

 The PCF does not stand in the shoes of the Defendant. It is a creature of the legislature created solely to pay excess damages to an injured plaintiff who can prove that his excess damages were caused by the health care provider's malpractice. To allow it to raise exceptions after the payment would be to permit it to raise defenses only given to a Defendant, which is it not.
 
 See: McCrory [v. Jefferson Parish Hosp. Service District No. 2,
 
 96-624 (La.App. 5 Cir. 12/30/96)], 686 So.2d at 1064. Thus, we find that the PCF cannot raise the exceptions at this time.
 

 [15]
 

 . See also our decision in
 
 Miller v. Southern Baptist Hosp.,
 
 00-1352 (La.App. 4 Cir. 11/21/01), 806 So.2d 10.
 

 [16]
 

 . Louisiana Revised Statute 40:1299.44(C)(1-5(a)) provides:
 

 (1)
 
 A petition shall be filed by the claimant
 
 with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is- domiciled
 
 seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient’s compensation fund.
 

 (2) A copy of the petition shall be served on the[Louisiana Patient's Compensation Fund Oversight] board, the health care provider and his insurer, at least ten days before filing and shall contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.
 

 (3) The board and the insurer of the health care provider or the self-insured health care provider may agree to a settlement with the claimant from the patient's compensation fund, or the board and the insurer of the health care provider or the self-insured health care provider may file written objections to the payment of the amount demanded. The agreement or objections to the payment demanded shall be filed within twenty days after the petition is filed.
 

 (4) As soon as practicable after the petition is filed in the court the judge shall fix the date on which the petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.
 

 (5)(a) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the trier of fact shall determine at a subsequent trial which shall take place only after the board shall have been given an adequate opportunity to conduct discovery, identify and retain expert witnesses, and prepare a defense, the amount of claimant’s damages, if any, in excess of the amount already paid by the insurer of the health care provider or self-insured health care provider. The trier of fact shall determine the amount for which the fund is liable and render a finding and judgment accordingly. The board shall have a right to request trial by jury whether or not a jury trial has been requested by the claimant or by any health care provider, (emphasis supplied).
 

 [17]
 

 . An exception of prematurity was filed in the Dorothy Reed claim, but we have not considered that exception in light of our holding on the exception of no cause of action.
 

 [18]
 

 . Writ application
 
 #
 
 2008-C-0572 and appeal
 
 #
 
 2008-CA-0431.
 

 [19]
 

 . Writ applications # 2008-C-0570, # 2008-C-0571, and # 2008-C-0573.
 

 [20]
 

 . Appeal # 2008-CA-0430.