657 So.2d 628 (1995)
Jane DOE and John Doe
v.
Jack DOE, et al.
Jane DOE and John Doe
v.
Don LICHTENSTEIN, et al.
Nos. 94 CA 2284, 94 CA 2285.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
*629 Michael A. Patterson, Baton Rouge, for appellants, Patients' Compensation Fund and Patients' Compensation Fund Oversight Bd.
Edward J. Walters, Jr., Baton Rouge, for plaintiffs-appellees.
Before WATKINS and FOGG, JJ., and TANNER, J. Pro Tem.[1]
THOMAS W. TANNER, Judge Pro Tem.
This is an appeal by the Patient's Compensation Fund and the Patient's Compensation Fund Oversight Board (hereinafter collectively referred to as the PCF) of a judgment awarding the plaintiffs a total of $750,000 for damages sustained by them as a result of medical malpractice committed by Dr. Don Lichtenstein. (The judgment is subject to a statutory maximum of $500,000, less a credit of $100,000 representing the amount of settlement between plaintiffs and Dr. Lichtenstein and his insurer entered into prior to trial.) After a thorough review of the record, we find no merit to appellants' arguments, and accordingly, affirm.

Factual and Procedural Background
In June, 1987, plaintiff, Jane Doe, became a patient of the defendant, Dr. Don Lichtenstein, in his professional capacity as a clinical psychologist. Mrs. Doe had been suffering from depression since the death of her mother, as well as having various other personal losses in her life, and she was referred to Dr. *630 Lichtenstein by her obstetrician/gynecologist, Dr. Robert L. DiBenedetto. When she began treatment with Dr. Lichtenstein, her depression was in a severe state, and she was suicidal. Mrs. Doe's first office visit with Dr. Lichtenstein was on June 23, 1987; by August 11, 1987, Dr. Lichtenstein and Mrs. Doe were engaging in various sexual acts, including intercourse, during the office visits. Sexual activity continued to take place during each of Mrs. Doe's therapy sessions, until they were terminated in April, 1989. The record established that during this time, Dr. Lichtenstein also convinced Mrs. Doe to get a medically unnecessary hysterectomy by misrepresenting symptoms to her gynecologist, Dr. DiBenedetto. Mrs. Doe underwent a total abdominal hysterectomy on February 3, 1988, and subsequently admitted that she lied about her symptoms to Dr. DiBenedetto at Dr. Lichtenstein's insistence.
Also, during the time Dr. Lichtenstein was engaging in sexual activity with Mrs. Doe, Mrs. Doe's husband began therapy with Dr. Lichtenstein as his clinical psychologist on December 1, 1987. Mr. Doe terminated his treatment with Dr. Lichtenstein in December, 1988.
After terminating treatment with Dr. Lichtenstein, Mrs. Doe has necessitated treatment from numerous mental health care professionals, including hospitalizations at CPC Meadow Wood Hospital, River Oaks Hospital and Greenbrier Hospital. She has survived three suicide attempts, and continues to require psychotherapy and counseling to enable her day-to-day functioning.
In June, 1990, plaintiff and her husband, John Doe, filed an action in district court against Dr. Lichtenstein and his liability insurer, American Home Assurance Company, seeking damages sustained as a result of the alleged sexual abuse. (The claim was first presented for a medical review panel as required by the Medical Malpractice Act; the panel was waived by the defendant.) Plaintiffs subsequently settled their claims against Dr. Lichtenstein and his insurer for the statutory maximum allowable under the Act, $100,000, pursuant to LSA-R.S. 40:1299.42 B.(2) and D.(5).[2] Plaintiffs then filed a Petition for "Court Approval of Settlement of a Medical Malpractice Claim With Reservation of Rights Against the Louisiana Patient's Compensation Fund to Determine Excess Damages Pursuant to LSA-R.S. 40:1299.44(C)," seeking the recovery of damages in excess of $100,000, up to the statutory maximum of $500,000.[3] The settlement *631 was approved, despite objections by the PCF that Dr. Lichtenstein's misconduct was not "malpractice" as defined by the act, since the abuse was not "unintentional." In approving the settlement, the trial court found that the settlement between the plaintiff and Dr. Lichtenstein and his insurer for $100,000 established the doctor's liability for malpractice under the act and the only remaining issue was that of the extent of damages, if any, in excess of $100,000.
The matter then proceeded to a three day trial by jury. The jury returned a special verdict awarding Mrs. Doe $346,000 and her husband $4,000. A judgment, adopting the jury's verdict, was signed by the trial court on September 1, 1993, in favor of the plaintiffs for $350,000 subject to a credit of $100,000. The trial court subsequently granted JNOV in favor of the plaintiffs on the basis of legal error in the jury's failure to award general damages when special damages had been awarded. The JNOV awarded the plaintiffs a total of $750,000, reduced to the statutory cap of $500,000, and subject to a credit of $100,000. The trial court adopted the jury's finding that Mrs. Doe is in need of future medical care, and increased that award to $150,000.[4]
The PCF appeals on the basis of three assigned errors: (1) the trial court erred by allowing the admission of evidence of tortious acts which occurred prior to June 1, 1988 (the date on which Dr. Lichtenstein became a qualified health care provider); (2) the trial court erred in allowing evidence concerning sexual misconduct as such conduct is not malpractice as defined by the Louisiana Medical Malpractice Act; and (3) the trial court erred in granting an additur of general damages in the amount of $750,000 and increasing the future medicals to $150,000.

Dr. Lichtenstein's Liability
Dr. Lichtenstein became a health care provider pursuant to the terms of LSA-R.S. 40:1299.44 and 40:1299.42.A.(3) on June 1, 1988. Appellants contend that prior to this date, Dr. Lichtenstein's conduct was not covered by the act; and therefore, all evidence of tortious acts committed prior to June 1, 1988, as well as evidence of any damage sustained by the plaintiffs prior to June 1, 1988, is irrelevant and should have been inadmissible. Appellants further contend that the trial court erred in admitting evidence regarding any of the sexual misconduct, arguing that such misconduct was "intentional" and therefore not covered within *632 the scope of "malpractice" as defined by the act.
It is well settled in our law that the payment, in settlement, of $100,000 to a medical malpractice victim by a qualified health care provider (or the provider's insurer) triggers the admission of the liability provision of LSA-R.S. 40:1299.44 C.(5), and the only contested issue remaining thereafter between the victim and the Fund is the amount of the victim's damages in excess of the amount already paid. In these cases, the provider's willingness to settle with the victim is deemed an "admission" of liability. Thomas v. Insurance Corporation of America, 93-1856 (La. 2/28/94) 633 So.2d 136, Koslowski v. Sanchez, D.D.S., 576 So.2d 470 (La.1991), overruled on other grounds, Russo v. Vasquez, 94-2407 (La. 1/17/95), 648 So.2d 879; Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990); see also Jones v. St. Francis Cabrini Hospital, 93-1375 (La.App. 3rd Cir. 6/1/94), 638 So.2d 673, aff'd, 94-2217 (La. 4/10/95), 652 So.2d 1331; Otnott v. Morgan, M.D., 93-0684 (La.App. 4th Cir. 3/15/94), 636 So.2d 957, writ denied, 94-1743 (La. 10/28/94), 644 So.2d 650; Schwarzenburg v. Jackson, M.D., 600 So.2d 163 (La.App. 5th Cir.1992).
Appellants' challenge to the admissibility of evidence on the basis that the misconduct is not "malpractice" as defined by the act and that some of the misconduct occurred during a time when the provider's liability was not covered is nothing more than an attempt to contest the liability of Dr. Lichtenstein with regard to his conduct with the plaintiffs. We need not address the merits of appellants' arguments regarding the admissibility of evidence; such evidence is deemed irrelevant by the statutory scheme of the medical malpractice act. Dr. Lichtenstein's liability was admitted and established upon settlement with the plaintiffs for $100,000. We have reviewed the record and find the evidence contained therein is relevant and was properly admitted for a determination of plaintiffs' damages sustained as a result of Dr. Lichtenstein's admitted liability.

JNOV
In assigning error to the amount of damages awarded, the appellants claim the trial court erred in reforming the judgment by granting an additur, because the jury did not abuse its discretion. Appellants mischaracterize the actions of the trial court and thereby suggest an improper standard of review. The jury in this matter committed legal error; and therefore, the trial court properly granted the JNOV. See Morgan v. Belanger, 633 So.2d 173 (La.App. 1st Cir. 1993), writ denied, 93-3121 (La. 2/11/94), 634 So.2d 832.
The jury awarded special damages to the plaintiffs for past medical expenses, loss of income and impairment of future earning capacity, and future medical expenses in the total amount of $350,000. However, the jury failed to award general damages. On the basis of this legal error (see Martin v. Francis, 600 So.2d 1382 (La.App. 1st Cir.) writ denied, 606 So.2d 541 (1992)), the plaintiffs sought, and were granted a JNOV.
The trial court then assessed damages and rendered judgment in favor of the plaintiffs for a total of $750,000 in general damages, subject to the statutory maximum, and less a credit of the $100,000 settlement. The trial court affirmed the jury's finding the plaintiff in need of future medical care, and increased this award from $48,000 to $150,000.
Once a trial court has granted a JNOV on the issue of damages, it must conduct its own independent assessment of the damages as trier of fact, and its conclusion is reviewed on appeal for an abuse of discretion. See Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991).
Our review of the record convinces us that the trial court did not err in granting the JNOV, nor in assessing damages in the total amount of $750,000. Mrs. Doe was a wife, mother and kindergarten teacher in her mid-thirties when she first sought professional help from Dr. Lichtenstein. Instead of receiving professional help, Mrs. Doe was the victim of manipulative sexual misconduct. The expert testimony established that Dr. Lichtenstein's improper management of Mrs. Doe as a patient, including numerous boundary *633 violations, improper diagnosis, failure to refer for medication, failure to properly terminate, and last, but not least, the actual sexual abuse, resulted in a devastating psychological trauma, similar to incest, to Mrs. Doe and to her husband. Mrs. Doe has necessitated inpatient hospitalization on at least three occasions since terminating the relationship with Dr. Lichtenstein. Her psychological condition has deteriorated to suicide attempts on at least three occasions, one within one month prior to the trial in this matter. Mrs. Doe has necessitated hundreds of visits with mental health professionals since the termination of her "therapy" with Dr. Lichtenstein, and the prognosis is that she will continue to necessitate this care possibly for the rest of her life, in order to function in a day-to-day manner. Mrs. Doe underwent an unnecessary hysterectomy while under the influence, control and manipulation of her therapist. Mrs. Doe has been unable to return to work, and her personal relationships, most importantly with her husband and her son, have suffered from the damages sustained by her. Suffice it to say that the trial court was well within its discretion in concluding that $750,000 in total damages, plus an additional $150,000 for future medical care, was appropriate in this matter.
Finding no error below, we affirm the judgment of the trial court. Appellants are assessed costs of this appeal.
AFFIRMED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] LSA-R.S. 40:1299.42.B.(2) provides:

A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injury to or death of any one patient.
Section 1299.42.D.(5) provides:
In the event that a partial settlement is executed between the defendant and/or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, written notice of such settlement shall be sent to the [Patient's Compensation Fund Oversight] board. Such settlement shall not bar the continuation of the action against the patient's compensation fund for excess sums....
[3] LSA-R.S. 40:1299.44(C) provides, in pertinent part:

C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed:
(1) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient's compensation fund.
(2) A copy of the petition shall be served on the board, the health care provider and his insurer, at least ten days before filing and shall contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.
(3) The board and the insurer of the health care provider or the self-insured health care provider as the case may be, may agree to a settlement with the claimant from the patient's compensation fund, or the board and the insurer of the health care provider or the self-insured health care provider as the case may be, may file written objections to the payment of the amount demanded. The agreement or objections to the payment demanded shall be filed within twenty days after the petition is filed.
(4) As soon as practicable after the petition is filed in the court the judge shall fix the date on which the petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.
(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars. (emphasis added)
(6) Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil court case tried by the court.
(7) For the benefit of both the insured and the patient's compensation fund, the insurer of the health provider shall exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof. A self-insured health care provider shall, for the benefit of the patient's compensation fund, also exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof.
[4] LSA-R.S. 40:1299.43.A.(3) provides for a separate award of future medical care as follows:

If the total amount is for the maximum amount recoverable, exclusive of the value of future medical care and related benefits, the cost of all future medical care and related benefits shall be paid in accordance with this Section. (emphasis added)
LSA-R.S. 40:1299.43.D. specifies that payments for medical care are to be paid "without regard to the five hundred thousand dollar limitation imposed in R.S. 40:1299.42."