# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-36

LAUREEN OLSON

VERSUS

PAUL M. TOCE, JR., ET AL.

**********

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2011-0898
HONORABLE PATRICK MICHOT, DISTRICT JUDGE

**********

### SHANNON J. GREMILLION
### JUDGE

**********

Court composed of Syvia R. Cooks, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**WRIT GRANTED;
REVERSED, RENDERED IN PART, AND REMANDED.**

**Nadia de la Houssaye**
**Donald W. Washington**
**Jones Walker LLP**
**600 Jefferson Street, suite 1600**
**Lafayette, Louisiana 70502**
**(337) 593-7600**
**COUNSEL FOR OTHER RESPONDENT:**
     **Louisiana Patient's Compensation Fund Oversight Board**

**J. Lomax Jordan Jr.**
**Victor A. Ashy**
**1817 West University Avenue**
**Lafayette, Louisiana 70506**
**(337) 233-9984**
**COUNSEL FOR PLAINTIFF/APPLICANT:**
     **Laureen Olson**

**Michael W. Adley**
**Adam Gulotta**
**Judice & Adley, APLC**
**926 Coolidge Boulevard**
**Lafayette, Louisiana 70503**
**(337) 235-2405**
**COUNSEL FOR DEFENDANTS/RESPONDENTS:**
     **Paul M. Toce, Jr.**
     **Paul M. Toce, Jr., A Professional Medical Corporation**

**Thomas S. Schneidau**
**Norma F. Pizza**
**Milling Benson Woodward LLP**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**(985) 871-3924**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **LAMMICO**

**GREMILLION, Judge.**

The plaintiff-applicant, Laureen Olson, applied for supervisory writs with this court following the trial court's grant of the exceptions of vagueness, ambiguity, and prematurity filed by the Louisiana Patient Compensation Fund Oversight Board (the PCF) in response to her Petition for Approval of Settlement of Medical Malpractice Claim pursuant to La.R.S. 40:1231.4.[1] We called up the writ and requested supplemental briefing and argument. For the following reasons, the writ is granted, and the ruling of the trial court is reversed. The matter is remanded for proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

The basic facts of this case are not disputed. A medical review panel found that Dr. Paul M. Toce, Jr.,[2] defendant-respondent, committed medical malpractice in his treatment of Olson and, further, engaged in an inappropriate sexual relationship with her. Over the years, extensive litigation and procedural matters have arisen. Olson first filed two lawsuits in February 2011 prior to the convening of the panel: one for medical malpractice and one for general tort claims not considered medical malpractice. After the panel rendered its opinion in December 2012, and following appeals to this court, the general tort suit was amended to include the medical malpractice claims. In *Olson v. Louisiana Medical Mutual Insurance Co.*, 13-1182 (La.App. 3 Cir. 3/5/14), 134 So.3d 1276, *writ denied*, 14-1053 (La. 10/24/14), 151 So.3d 601, we reversed the trial court's ruling which sustained the exception of lis pendens, thereby reviving the original medical

---

[1] Louisiana Revised Statutes 40:1231.4 was redesignated from La.R.S. 40:1299.44 effective June 2, 2015, by House Concurrent Resolution No. 84.

[2] Dr. Paul M. Toce, Jr., A Professional Medical Corporation, is also a defendant in this action.

malpractice claim. Thereafter, the two suits were consolidated in September 2016. These suits asserted claims for medical malpractice and non-medical-malpractice claims arising from a sexual relationship between Toce and Olson.

Additionally, prior to the consolidation, Defendants filed various exceptions to the amended suit, arguing that Olson needed to specify which acts were medical malpractice and which were general tort claims. Olson filed writs with this court following the trial court's ruling that the lawsuit needed to be amended to specify which acts constituted medical malpractice and which constituted a breach of general tort law. The PCF participated in the arguments to the trial court. We granted the writ and reversed the trial court, finding that Olson's third amended supplemental and restated petition was "sufficient to inform the defendants of the claims asserted and to allow them to prepare a defense." *See* Writ Application, pg. 167, *Olson v. ABC Insurance Co.*, 15-339 (La.App. 3 Cir. 5/27/15) (an unpublished writ opinion).

Thereafter, in December 2016, Olson and Defendants agreed to settle her claims for the sum of $140,000, reserving all rights against the PCF. Olson filed her Petition for Approval of Settlement of Medical Malpractice Claim Pursuant to La.R.S. 40:1231.4.

In October 2016, the PCF filed an amended peremptory exception of no cause of action, dilatory exception of vagueness and ambiguity, answer and objections to the petition for approval of settlement of medical malpractice claim pursuant to La.R.S. 40:1231.4. The PCF's main argument was that the settlement does not assign dollar values distinguishing between medical malpractice and non-medical-malpractice claims being settled.

2

Following a November 2016 hearing, the trial court agreed and granted the PCF's exception of vagueness and ambiguity, thereby denying the petition for approval of the settlement. The trial court's judgment on the exceptions noted the granting of the exceptions were without prejudice to Olson's "right to amend, supplement or re-state the petition for approval of the settlement." In its written reasons for judgment, the trial court noted:

> Ultimately, the Court sustained the PCF's Dilatory Exception of Vagueness and Ambiguity, in order to allow the PCF to adequately prepare its defense for trial. The PCF must defend itself against claims of medical malpractice; however, the PCF does not need to defend itself against claims of non-medical malpractice.
>
> . . . .
>
> The Court sustained the PCF's Dilatory Exception of Prematurity, finding that it would be premature for this Court to approve Plaintiff's settlement with the underlying providers because the settlement clearly includes settlement of claims involving sexual misconduct, which are not covered by the Louisiana MMA.

Olson filed this writ application seeking reversal of the trial court's ruling and assigns as error:

> 1. The trial court erred in sustaining the dilatory exceptions of ambiguity and prematurity as the PCFOB an intervenor takes the proceedings as he finds them under La.C.C.P. Article 1094.
>
> 2. The trial court erred in sustaining the Dilatory Exception of Vagueness/Ambiguity relating to the petition to approve the settlement between plaintiff Olson and Defendants Toce APMC and Toce, Jr. and their insurer LAMMICO, as law of the case precludes reconsideration of the issue of vagueness.
>
> 3. The trial court erred in sustaining the Dilatory Exception of Prematurity relating to the petition to approve the settlement between plaintiff Olson and Defendants Toce APMC and Toce, Jr. and their insurer LAMMICO as there was full compliance with the statutory procedures mandated by LSA-RS 40-1231.4.
>
> 4. The trial court erred in failing to approve a global settlement of all claims by plaintiff Olson and against Defendants Toce APMC and Toce, Jr. and their insurer LAMMICO, since –

3

A) the settling parties are competent to enter into the settlement;

B) there is a basis for the plaintiff's claims in law and in fact;

C) the medical review panel found the defendant healthcare providers to be in breach of the standard of care; and,

D) the medical review panel found the defendant healthcare providers to have caused damage to the plaintiff and procedures mandated by LSA-R.S. 40;1231.4C were followed.

## DISCUSSION

Louisiana Revised Statutes 40:1231.4(C) (emphasis added) provides:

If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed:

(1) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled seeking (a) **approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient's compensation fund**.

(2) A copy of the petition shall be served on the board, the health care provider and his insurer, at least ten days before filing and shall contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.

(3) The **board** and the insurer of the health care provider or the self-insured health care provider as the case may be, **may agree to a settlement with the claimant from the patient's compensation fund**, or the board and the insurer of the health care provider or the self-insured health care provider as the case may be, **may file written objections to the payment of the amount demanded**. The agreement or objections to the payment demanded shall be filed within twenty days after the petition is filed.

(4) As soon as practicable after the petition is filed in the court the judge shall fix the date on which the

4

petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.

(5)(a) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider, as the case may be, may introduce relevant evidence to enable the court to determine **whether or not the petition should be approved if it is submitted on agreement without objections**. If the board, the insurer of the health care provider or the self-insured health care provider, as the case may be, and the claimant **cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the trier of fact shall determine at a subsequent trial** which shall take place only after the board shall have been given an adequate opportunity to conduct discovery, identify and retain expert witnesses, and prepare a defense, **the amount of claimant's damages, if any, in excess of the amount already paid by the insurer** of the health care provider or self-insured health care provider. **The trier of fact shall determine the amount for which the fund is liable and render a finding and judgment accordingly.** The board shall have a right to request trial by jury whether or not a jury trial has been requested by the claimant or by any health care provider.

(b) The board shall not be entitled to file a suit or otherwise assert a claim against any qualified health care provider as defined in R.S. 40:1231.1(A) on the basis that the qualified health care provider failed to comply with the appropriate standard of care in treating or failing to treat any patient.

(c) The board may apply the provisions of Civil Code Article 2323 or 2324, or both, to assert a credit or offset for the allocated percentage of negligence or fault of a qualified health care provider provided at least one of the following conditions is met:

(i) A payment has been made to the claimant by, in the name of, or on behalf of the qualified health care provider whose percentage of fault the board seeks to allocate.

5

(ii) A payment has been made to the claimant by, in the name of, or on behalf of another qualified health care provider in order to obtain a dismissal or release of liability of the qualified health care provider whose percentage of fault the board seeks to allocate, provided that there shall be no separate credit or offset for the fault of an employer or other vicariously liable entity who was not independently negligent or otherwise at fault and who makes a payment in order to obtain a dismissal or release of liability of a single qualified health care provider for whom the payor is vicariously liable.

(iii) All or a portion of a payment made by another qualified health care provider, by the insurer of another qualified health care provider, or by the employer of another qualified health care provider has been attributed to or allocated to the qualified health care provider whose percentage of fault the board seeks to allocate, provided that there shall be no separate credit or offset for the fault of an employer or other vicariously liable entity who was not independently negligent or otherwise at fault and who makes a payment in order to obtain a dismissal or release of liability of a single qualified health care provider for whom the payor is vicariously liable.

(iv) A medical review panel has determined that the qualified health care provider whose percentage of fault the board seeks to allocate failed to comply with the appropriate standard of care and that the failure was a cause of the damage or injury suffered by the patient, or a medical review panel has determined that there is a material issue of fact, not requiring expert opinion, bearing on liability of the qualified health care provider whose percentage of fault the board seeks to allocate for consideration by the trier of fact.

(v) The qualified health care provider does not object within thirty days after notice of

the board's intention to allocate the health care provider's percentage of fault is delivered via certified mail to the plaintiff, the qualified health care provider, and the qualified health care provider's professional liability insurer or to their attorneys.

(vi) The court determines, after a hearing in which the qualified health care provider whose percentage of fault the board seeks to allocate shall be given an opportunity to appear and participate, that there has been collusion or other improper conduct between the defendant health care providers to the detriment of the interests of the fund.

(d) Except where the sum of one hundred thousand dollars has been paid by, in the name of, or on behalf of the qualified health care provider whose percentage of fault the board seeks to allocate, in any case in which the board is entitled pursuant to the provisions of Civil Code Article 2323 or 2324, or both, to assert a credit or offset for the allocated percentage of negligence or fault of a qualified health care provider, the board shall have the burden of proving the negligence or fault of the qualified health care provider whose percentage of fault the board seeks to allocate.

(e) **In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the trier of fact shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars**, or where the self-insured health care provider has paid one hundred thousand dollars.

In her petition for approval of settlement claim, Olson avers:

11.

Olson specifically demands in excess of the settlement amount of One Hundred Forty Thousand and No/100 ($140,000) Dollars, specifically the additional amount of FOUR HUNDRED THOUSAND DOLLARS AND NO/100 ($400,000). In addition to the amount of FOUR HUNDRED THOUSAND DOLLARS AND NO/100 ($400,000) general damages demanded, Olson further demands:

7

a. judicial interest from date of judicial demand, or February 16, 2011, whichever is deemed earlier, which such amount of interest should exceed the sum of $89,000 at the time of approval of the settlement;

b. all court costs and litigation expenses, including the costs of the Clerk of Court in the above captioned causes, costs of appeal and/or taking of writs to the Louisiana Court of Appeal, Third Circuit, and the Louisiana Supreme Court, preparation of transcripts for trial or appeal; and, including but not limited to costs and expenses which may be awarded pursuant to Louisiana Code of Civil Procedure Art. 1920, LSA-R.S. 13;4533, and/or LSA-R.S. 13:3666; and/or which may be awarded pursuant to the rules off any applicable court of this state, or any of such courts' decisions, which said costs will exceed the sum of $45,000.00 at the time of approval of the settlement;

c. all past medical expenses which exceed the sum of $100,000 through the present time;

d. all expenses for future medical and/or psychiatric care of Olson which is the result of the medical malpractice of Toce and/or Toce APMC, which amounts are indeterminable at the present time.

Olson does make demand against the Louisiana Patient's Compensation Fund Board Oversight Board in the amount of $534,000.00, plus the cost of future medical expenses.

The proposed settlement agreement makes no mention of malpractice versus non-malpractice claims, except to say that Defendants are released from "any and all claims, demands, actions, causes of action, rights, obligations and liabilities of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, developed or undeveloped, pleaded or not pleaded . . . ."

## THE PCF'S STANDING AS AN INTERVENOR

### Olson's Right To Settle With Defendants

The PCF, as an intervenor, has no standing to object to the health care provider/insurer and a patient's agreement to settle, which is personal to the parties. *See* La.Code Civ.P. art. 1094; *Hanks v. Seale*, 04-1485 (La. 6/17/05), 904 So.2d 662. It is not the function of the PCF to determine liability as between the qualified

health care provider and the malpractice victim; rather, liability is determined by settlement or a trial. *Williams v. Kushner*, 549 So.2d 294 (La.1989); *Payne v. N.O. Gen. Hosp.*, 611 So.2d 777 (La.App. 4 Cir 1988). As noted by the court in *Reed v. St. Charles General Hospital*, 08-430, 08-431, 08-570-573, p.6 (La.App. 4 Cir. 5/6/09), 11 So.3d 1138, 1143, *writ denied*, 09-1252 (La. 9/18/09), 17 So.3d 979, the statute regulating the PCF has provisions "which prevent the PCF from challenging certain aspects of settlements entered into between the patient and the health care provider." Louisiana Revised Statutes 40:1231.4(e) states:

> In approving a settlement or determining the amount, if any, to be paid from the patient compensation fund, the trier of fact shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.

As noted in *Reed*, 11 So.3d at 1143,

> Another . . . critical restriction on the PCF is set forth in La.R.S. 40:1231.4(C)(6):
>
>> Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil court case tried by the court.

The PCF has standing to object when the integrity of the fund is jeopardized, such as when a claim clearly does not fall under the MMA. *Id.* For example, in *Reed*, the patient's wife, who contracted the HIV virus from her husband, but was never a patient at the hospital, was not covered under the MMA. Another instance would be when the PCF challenges whether the physician-defendant is a qualified health care provider under the MMA. *See Bennet v. Krupkin*, 01-209 (La. 10/16/01), 798 So.2d 940.

9

The situation here is not analogous. There is no doubt that Olson has significant claims falling under the MMA, and in fact, there is a valid argument to be made that even those claims Olson designated as non-MMA claims in her third amended and supplemental petition are covered under the Act due to the interrelated nature of the medical malpractice, particularly relating to Olson's mental health and the sexual relationship. *See Doe v. Doe*, 94-2284, 2285 (La.App. 1 Cir. 1995), 657 So.2d 628, *writ denied*, 95-1810 (La. 10/27/95), 661 So.2d 1353.[3]

### The PCF's Right To Defend Itself From Claims In Excess of $100,000

The settlement agreement between Olson and Defendants has no effect on the rights provided for by law that inure to the benefit of the PCF. The language contained in the settlement agreement is irrelevant insofar as it does not control the PCF's rights; the law does. The PCF's remedy is to contest damages as specifically provided for in La.R.S. 40:1231.4(C)(5)(a)(emphasis added) which directs that if the PCF, insurer, and claimant cannot agree on the amount:

> **to be paid out of the patient's compensation fund, then the trier of fact shall determine at a subsequent trial which shall take place only after the board shall have been given an adequate opportunity to conduct discovery, identify and retain expert witnesses, and prepare a defense, the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider or self-insured health care**

---

[3] In *Doe*, the severely-depressed patient engaged in a sexual relationship with the defendant clinical psychologist. The PCF challenged the inclusion of the sexual relationship as "malpractice." The *Doe* court stated:

> Appellants' challenge to the admissibility of evidence on the basis that the misconduct is not "malpractice" as defined by the act and that some of the misconduct occurred during a time when the provider's liability was not covered is nothing more than an attempt to contest the liability of Dr. Lichtenstein with regard to his conduct with the plaintiffs. We need not address the merits of appellants' arguments regarding the admissibility of evidence; such evidence is deemed irrelevant by the statutory scheme of the medical malpractice act.

*Doe,* 657 So.2d at 632.

**provider. The trier of fact shall determine the amount for which the fund is liable and render a finding and judgment accordingly.**

We want to be clear that Olson still bears the burden of proving causation of her damages in excess of the $100,000 settlement. In *Graham v. Willis-Knighton Medical Center*, 97-188, p.15 (La. 9/9/97), 699 So.2d 365, 372, the supreme court stated:

> We now conclude that the legislative intent of "liability" in Section [40:1231.4(C)(5)] was that the payment of $100,000 in settlement establishes proof of liability for the malpractice and for damages of at least $100,000 resulting from the malpractice, which is a very significant benefit to the medical malpractice victim. However, at the trial against the Fund, the plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $100,000.

The supreme court later further explained its reasoning in *Khammash v. Clark*, 13-1564, 13-1736, pp. 12-13 (La. 5/7/14), 145 So.3d 246, 255-56:

> In *Hall v. Brookshire Bros., Ltd.*, 02–2404 (La.6/27/03), 848 So.2d 559, we explained the rationale for this rule:
>
>> Liability implies some damage, but not specifically which damage or how much. *Moolekamp v. Rubin*, 531 So.2d 1124, 1126–1127 (La.App. 4 Cir.1988). Having proven that defendant's fault caused damage, a plaintiff must further prove what damage, by kind and seriousness, was caused by defendant's fault before the court can render an appropriate award. *Id.*
>>
>> A defendant is only liable for that damage caused by his or her fault. Fault is a broad concept, encompassing all conduct falling below a proper standard. *Weiland v. King*, 281 So.2d 688, 690 (La.1973), citing *Langlois v. Allied Chemical Corporation*, 258 La. 1067, 249 So.2d 133 (1971).
>>
>> When a defendant stipulates to liability, that defendant acknowledges that his or her fault (substandard performance of a legal duty owed to plaintiff for the protection from certain risks of harm) caused the plaintiff to sustain some damage (in the case of the qualified health care provider under the Medical Malpractice Act, that defendant stipulates that the damage he or she caused is at least $100,000).

11

However, there can be, and frequently is, more than one cause of a plaintiff's damages. *Graves v. Page* 96–2201 (La.11/7/97), 703 So.2d 566, 570; *Syrie v. Schilhab*, 96–1027 (La.5/20/97), 693 So.2d 1173, 1179. Because a defendant is liable only for that damage caused by his or her fault, when a defendant stipulates to liability for fault, he or she does not thereby necessarily concede responsibility for 100% of the fault.

In the same vein, when a health care provider tenders payment of $100,000.00, thereby admitting and establishing "liability," that admission of liability is an admission of fault and causation of damages of at least $100,000.00. It is not an admission of the percentage of fault attributable to the health care provider; nor is it an admission as to the extent of the claimant's damages beyond $100,000.00. Louisiana Revised Statute 40:1299.44(C)(5) speaks directly and exclusively to the liability of the health care provider; it is silent with respect to the responsibility of any other actor.

*Hall*, 02–2404 at pp. 11–12, 848 So.2d at 567–68.

Clearly, when the PCF and claimant dispute the remaining amount due, the PCF is entitled to full discovery and a trial at which, under the statutory provisions and in accord with our jurisprudence, the claimant must prove his damages, if any, attributable to the malpractice in excess of the amount already paid by the defendant physician. Prior to the trial provided for in La.Rev.Stat. § 40:1299.44(C)(5)(a), only the liability of the defendant physician for the malpractice and damages up to $100,000 is conclusively established by the settlement in accordance with La.Rev.Stat. § 40:1299.44(C)(5)(e).

At the trial, the PCF has the opportunity to contest the amount of damages Olson claims in excess of the amount already paid pursuant to the settlement agreement. The settlement agreement does not alleviate Olson's burden of proving causation of damages for any amount in excess of the $100,000 settlement. While Olson receives a great benefit from the settlement, it does not prevent the PCF from exercising its right to fully defend itself from the claims of damages in excess of $100,000.

## CONCLUSION

Olson's writ application is granted. We reverse the trial court's grant of the PCF's exceptions of ambiguity, vagueness, and prematurity and find that the health care provider and patient's settlement agreement is valid, and remand for further proceedings consistent with La.R.S. 40:1231.4(C)(5)(a). Costs of this appeal are assessed to the Louisiana Patient Compensation Fund Oversight Board.

**WRIT GRANTED;**

**REVERSED; RENDERED IN PART; REMANDED**.